HELEN LaFORGE BOWDITCH *vs.* WILLIAM I. BOWDITCH.

Norfolk. May 12, 1943. — July 13, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Marriage and Divorce,* Jurisdiction, Foreign divorce. *Jurisdiction,* Divorce proceedings. *Constitutional Law,* Full faith and credit, Divorce. *Domicil. Evidence,* Presumptions and burden of proof.

The full faith and credit clause of the Federal Constitution does not preclude the courts of one State from inquiring into the jurisdictional facts underlying a judgment of divorce rendered by a court of another State.

A bona fide domicil in a State of at least the petitioner in divorce proceedings in a court of that State is essential to the jurisdiction of that State to grant a divorce.

One who relies on a divorce granted by a court of another State has the burden of proving the jurisdictional facts underlying the judgment of divorce.

A party to a proceeding in this Commonwealth, who relied on a divorce granted him in an Idaho court under a statute of that State requiring

residence therein of a plaintiff for divorce "for six full weeks next preceding the commencement of the action," failed to sustain the burden of proving the essential fact of a bona fide residence in Idaho for the requisite period where the evidence in the proceeding here showed at most that he was at a hotel in Idaho for two days about six months before commencing the divorce action, for ten days about three months before it was commenced and for three days at the time of its commencement.

PETITION, filed in the Probate Court for the county of Norfolk on September 22, 1942.

The case was heard by *Reynolds*, J., and in this court was submitted on briefs.

*E. R. Dewing*, for the respondent.

*E. S. Farmer*, for the petitioner.

DOLAN, J. This is a petition for guardianship of the estate in this Commonwealth of the respondent as a spendthrift. The petitioner alleges that she is the wife of the respondent; and that by excessive drinking, gaming, and idleness he so spends, wastes and lessens his estate as to expose his family to want and suffering, and also thereby exposes the "town of Newton" to expense for her and their support. See G. L. (Ter. Ed.) c. 201, § 8; *Dexter* v. *Dexter*, 283 Mass. 327. The respondent filed a plea in abatement as follows: "Now comes William I. Bowditch and says that on the eighth day of November, 1940, the District Court of the Third Judicial District of the State of Idaho, in and for the County of Ada, a court of competent jurisdiction, ordered and adjudged that the marriage theretofore existing between William I. Bowditch and Helen LaForge Bowditch (the petitioner) be dissolved; that they be divorced absolutely and that thereafter they and each of them occupy the status of single, unmarried persons. Wherefore the petitioner is not a proper person to file a petition under section 8 of Chapter 201 of G. L. (Ter. Ed.) and your respondent respectfully requests that said petition be dismissed." If the petitioner was not the wife of the respondent, not being otherwise related to him, she would have no standing as party petitioner. See G. L. (Ter. Ed.) c. 201, § 8; *Mitchell* v. *Mitchell*, 312 Mass. 154, 159–162. At the hearing of the plea a stenographer was appointed to report the

evidence. After hearing the judge entered the following de-
cree: "After a full hearing on the respondent's 'plea in
abatement', it appearing to the court that the allegation of
fact contained in said plea has not been proved: It is ad-
judged that said plea in abatement is disproved, and is
therefore dismissed." Being of opinion that this interlocu-
tory decree so affects the merits of the controversy that the
matter ought, before further proceedings, to be determined
by this court, the judge reported the same together with
"the evidence and all questions of law" for the determina-
tion of this court. See G. L. (Ter. Ed.) c. 215, § 13.

Material facts disclosed by the evidence follow: The par-
ties were married in Newton on February 24, 1934. They
then went to live at 1662 Commonwealth Avenue in that
city, in a house owned by the petitioner since 1925. This
house continued to be the home of the parties. On Sep-
tember 10, 1939, the respondent entered the McLean Hos-
pital in Belmont and remained there until April 9, 1940,
when he left the Commonwealth. Arriving at the hospital
to visit the respondent on that day, the petitioner found
that he was not there. On March 29, 1940, he sent a letter
to the trust officer of a trust company that was the trustee
under his father's will, in which he said: "I am about to
leave on an indefinite trip which is not likely to bring me
back to this vicinity for some time." On his departure he
took none of his personal effects from his home except a
panama hat and a black suit. In answer to interrogatories
the respondent stated that he left this Commonwealth be-
cause his wife had ceased to care for him, if she ever did,
and was interested in having him committed to some insti-
tution and having a guardian appointed; that he became
acquainted with one Nan Dissel in Seattle, Washington, in
1926; that her husband died in August, 1938; that he had
corresponded with her between that date and April 10,
1940, made a telephone call to her in May, 1939, and talked
with her; that he saw her occasionally during June and the
early part of July, 1940, in Seattle, where he lived at the
Hotel Mayflower; that he went to Idaho about the middle
of July, 1940, and remained there until the first of the year

1941; that since that date he has lived in Seattle, Washington; and that on May 28, 1941, he and Nan Dissel were married in Coeur d'Alene, Idaho. There was evidence that on October 3, 1940, the respondent filed an action to procure a divorce from the petitioner in the District Court of the Third Judicial District of Idaho for the county of Ada, on the ground of extreme cruelty. On that day a summons was issued from that court directing the petitioner herein to appear and plead to the complaint within twenty days of the service. She 'was served with the summons together with a copy of the complaint at her home in Newton, but she did not appear nor take any part in the proceedings. A decree was entered in the District Court of the Third Judicial District of Idaho on November 8, 1940, wherein it was ordered and adjudged that the marriage "heretofore existing between plaintiff and defendant be dissolved, that they be divorced absolutely and that hereafter they and each of them occupy the status of single, unmarried persons." It was further ordered that neither of the parties should again become married, "unless each to the other, for a period of six (6) months next following the date of judgment herein." There is nothing in the respondent's answers to the interrogatories and cross-interrogatories propounded to him to show at what address he lived in Idaho during the period from about the middle of July, 1940, to the first of the year 1941. But a deposition of the manager of the Hotel Boise, Boise, Idaho, was admitted in evidence from which it appears that the respondent had registered at that hotel on three different occasions in 1940, and that the records of the hotel showed the following registrations by him: "Address: 1662 Commonwealth Avenue, West Newton, Massachusetts. Arrived: April 29, 1940. Departed: April 30, 1940. Address: 1604–43rd North, Seattle, Washington. Arrived: July 20, 1940. Departed: July 30, 1940. Address: Seattle, Washington. Arrived: October 3, 1940. Departed: October 6, 1940." So far as these records disclose he had spent not more than two days at that hotel in·April, 1940, only ten days in July, 1940, and only three days in October, 1940. On one of those occasions he gave

his address as West Newton, Massachusetts, and on two of those occasions he gave his address as Seattle, Washington, in one instance as of a stated street and number in Seattle. Significantly, the third date of registration is the same date as that upon which he filed the complaint for divorce in the District Court of the Third Judicial District of Idaho.

Certified copies of the parts of the Idaho Code Annotated (1932) relative to divorce and service of process were brought to the attention of the judge. Section 31–701 of the code as amended provides, so far as here material, as follows: "Residence Required by Plaintiff. — A divorce must not be granted unless the plaintiff has been a resident of the state for six full weeks next preceding the commencement of the action."

A consideration of the entries in the hotel register, to which we have referred, in the light of the failure of the respondent to prove any other places in the State of Idaho at which he might have resided, leads strongly to the conclusions that the respondent has not sustained the burden of proving that he ever acquired a domicil in the State of Idaho, and that the decree or judgment entered in that action was void for lack of jurisdiction.

The constitutional provision "that full faith and credit shall be given in each State to the judicial proceedings of other States, does not preclude inquiry into the jurisdiction of the court in which the judgment is rendered, over the subject matter, or the parties affected by it, or into the facts necessary to give such jurisdiction." *Thormann* v. *Frame*, 176 U. S. 350, 356. In *Bell* v. *Bell*, 181 U. S. 175, 177, 178, it was decided that a bona fide residence on the part of the petitioner was essential to the validity of a decree of divorce, and that recitals in the divorce proceedings of facts necessary to show jurisdiction may be contradicted. We think that these principles are still good law.

There is nothing in conflict with the principles just stated in the case of *Williams* v. *North Carolina*, 317 U. S. 287, so largely relied upon by the respondent in support of his contention that the jurisdiction of the Idaho court to grant the divorce in question cannot be questioned in the present pro-

ceeding. In the *Williams* case the court stated that North
Carolina "admits that there probably is enough evidence in
the record to require that petitioners be considered 'to have
been actually domiciled in Nevada'" (page 291), the State
in which the divorces under attack were granted. A bona
fide domicil of the petitioners in that case was assumed by
the court (page 302) which stated that "each state, by virtue
of its command over its domiciliaries and its large interest
in the institution of marriage, can alter within its own bor-
ders the marriage status of the spouse domiciled there, even
though the other spouse is absent," and held that there is no
constitutional barrier if the form and nature of the substi-
tuted service meet the requirement of due process (pages
298–299); and said, in substance, that under the full faith
and credit clause and the act of May 26, 1790, c. 11, U. S. C.
Title 28, § 687, when a decree of divorce, granted by a State
to one who is at the time bona fide domiciled therein, is
rendered in a proceeding complying with due process, such
decree, if valid under the laws of that State, is binding upon
the courts of other States (page 299). It was further said
that the issue in the *Bell* case was not reached in the *Wil-
liams* case. That is because it was conceded in the *Williams*
case that there was enough evidence in the record to require
that the petitioners be considered to have been actually
domiciled in Nevada.

As we interpret the decision under discussion, we are of
opinion that it is still competent for the courts of other
States to inquire into the validity of a divorce so far, at
least, as its validity depends upon the jurisdiction of the
State where the divorce was granted, and that a domicil by
one of the parties in the State in which the divorce was
granted is essential to jurisdiction. See *Williams* v. *North
Carolina*, 317 U. S. 287, 297, 298. That there is nothing in
the *Williams* case contrary to the rule that one who relies
upon a foreign divorce must not only plead and prove it,
but must also prove his bona fide domicil at the time the
divorce relied upon was granted in the foreign State, is the
interpretation placed upon the *Williams* case in cases since
decided by a State court (though not of last resort). See

*Schnabel* v. *Schnabel,* 179 Misc. (N. Y.) 620; *Jiranek* v. *Jiranek,* 179 Misc. (N. Y.) 502; *Meyers* v. *Meyers,* 179 Misc. (N. Y.) 680. We are of opinion that there is nothing in the *Williams* case in conflict with *Bell* v. *Bell,* 181 U. S. 175, which holds that at least the petitioner must be genuinely domiciled in the State that granted the divorce.

In the present case it is our duty under the familiar rule to examine the evidence and to decide the case according to our own judgment, giving due weight to the findings of the judge, expressed or implied in the decree entered by him, which will not be reversed unless plainly wrong. An examination of the evidence satisfies us that it supports the conclusion that the respondent has not sustained the burden of proving the affirmative defence that he has been divorced from the petitioner by a court of competent jurisdiction.

There is nothing in *Davis* v. *Davis,* 305 U. S. 32, cited by the respondent, that is in conflict with the result here reached. In that case it was expressly found that the petitioner had been domiciled for the requisite time in the State in which he had been granted an absolute divorce.

The decree entered by the judge overruling the plea in abatement is affirmed.

*Ordered accordingly.*