No. 38,318

DONALD F. BIERCE, *Appellee*, v. MARY AGNES HANSON, Formerly Mary Agnes Bierce, *Appellant*.

(233 P. 2d 520)

Opinion filed July 3, 1951.

*James A. Williams,* of Dodge City, argued the cause, and *C. W. Hughes,* of Dodge City, was with him on the briefs for the appellant.

*Donald C. Smith,* of Dodge City, argued the cause, and *Frederick L. Hall,* of Dodge City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a judgment denying a motion for a change in the custody of a child which previously had been awarded to the father and to permit the mother to remove the child to her new home in the state of Idaho.

A brief introductory statement of events in chronological order may be helpful. The appellant, Mary Agnes Hanson, formerly Mary Agnes Bierce, and the appellee, Donald F. Bierce, were married in Pennsylvania in 1946; appellee is now twenty-four years of age and appellant is twenty-one; in the latter part of 1946 they moved to Dodge City and lived with appellee's parents; the son, Donald F. Bierce, Jr., over which appellant seeks the custody, was born in June, 1947; in the fall of 1947 appellee filed an action for divorce against appellant in the district court of Ford county, which is the same court that heard the instant motion for change of custody; appellant filed an answer in the divorce action and asked for custody of the child; a divorce was granted to appellee on December 13, 1947, and custody of the child was awarded to him; although the journal entry of judgment in the divorce case recites both plaintiff and defendant introduced their evidence it is here conceded that, for reasons not indicated, appellant did not appear at the hearing of the divorce action but was represented by counsel; it appears her counsel did not know of her whereabouts; we are not advised concerning the ground, or grounds, on which the divorce was granted and are not supplied with a record or the substance of the evidence adduced in support thereof; the court awarded the wife alimony in the sum of $300 payable at the rate of

$12.50 per month until paid; she was also granted the privilege of visitation at reasonable times; the privilege was not exercised until a few days before the instant hearing in November, 1950.

Within a month and a half after the divorce was granted to appellee the appellant married a man by the name of Hanson in Kansas City; appellant and her new husband lived in Nebraska about six months and then moved to Sagle, Idaho, and bought a property containing seventy acres of land; appellant and her present husband are the parents of a boy who was thirteen months' old November 12, 1950; appellant stated that at the time of the divorce she was in poor health as a result of the Caesarean birth of the child and was financially unable to support the child; appellant had her mother carry on a correspondence with the child's paternal grandmother and had caused her mother to send gifts to the child on occasions; the frequency of the gifts or the nature thereof is not disclosed; approximately a year or a year and a half prior to the hearing of the instant motion appellant consulted her attorney at Dodge City about trying to obtain custody of the child and expressed her desire to visit the child but her attorney advised against it; no motion for a change of custody was filed; the reason, or reasons, for the advice of her attorney are not disclosed.

On November 18, 1949, appellee's mother filed a motion in the district court to obtain a transfer to her of the sum of $62.50 to be used for the support and maintenance of the child; that amount had been deposited by appellee with the clerk of the district court to the credit of appellant as payment on the alimony award; the court found an unsuccessful Federal Bureau of Investigation search for appellant had been made and her whereabouts was unknown; that the money so deposited had remained unclaimed for over two years; that appellee had placed the care of the child in his mother and that the money should be paid to his mother for the care, maintenance and education of the minor son.

In November, 1949, appellee's parents filed a petition in the probate court of Ford county for the adoption of the child; appellee filed his written consent to such adoption; appellant contested the adoption and the petition was denied; a few days thereafter she filed the instant motion for change of custody which was denied.

Other testimony by appellant was, in substance, as follows:

Appellant's present husband is employed as a journeyman line-

man for an electric company and earns between $200 and $300 a month; he also deals in timber; he is forty-eight years of age and in perfect health; he would welcome the child into his home; her husband is affectionate and kind in his dealings with their own child; the property in Idaho has a modern house and equipment; appellant's husband invested about $5,000 in the Idaho property and owes about that same amount on it; he is indebted on his automobile but has no other debts; a modern country school is located about four or five miles from their home; there is school bus service passing their home; appellant belongs to and is a regular attendant of a Catholic church; it is her intention that her son should receive religious training if she is awarded the custody; appellant has a slight heart ailment but it does not impair the performance of her duties as a housewife and mother.

Appellant called appellee as her witness. His testimony, in substance, was: He admitted he consented to the adoption but denied he had abandoned the child; the child had been under the immediate care of his parents who live near Dodge City with whom appellee now also lives; there are no other children in that home but there are children in the neighborhood; after the divorce appellee was married to another woman, with whom he lived about eighteen months in Hutchinson; during that time the son was with him and his wife occasionally during week ends; while in Dodge City he lived in the home of his parents about six months and also had a trailer house parked in the yard of his parents; the child lived in the trailer house with him and in the house with appellee's mother about equal portions of the time; appellee's mother has taken care of the child since he was divorced from appellant; whenever he was at home he helped care for the child with respect to anything that needed to be done; he helped discipline the child and paid his mother for its support to the extent of about $10.00 a week; that if the custody was not changed the child would continue to reside with his parents and he and his parents would continue to care for him.

Appellant contends (1) the evidence disclosed appellee had abandoned the child; and (2) the court abused its judicial discretion in not sustaining her motion for a change of custody.

Touching the first contention appellant emphasizes the fact appellee placed the child into the actual care of his parents instead of caring for the child himself. It is true the child was for a time left in the immediate care of appellee's parents. The reason was

appellee was at that time working elsewhere to earn a living. That fact alone, however, did not establish abandonment. Nor did it in itself constitute a ground for a change of custody from the father to the mother. See *Dodd v. Dodd*, 171 Kan. 46, 48-49, 229 P. 2d 761, in which this precise subject was ably treated.

It is not contended the child was not well treated and cared for in the home of the paternal grandparents. In fact the trial court expressly found the contrary to be true. It stated: ". . . at its age it has got along mighty well with its grandparents here." Appellant refers to a portion of the petition which appellee's parents filed in the probate court for the adoption of the child. She stresses the fact appellee consented to such adoption and emphasizes the allegation in the petition that appellee had abandoned the child. This, of course, was not appellee's allegation. Frederick L. Hall, counsel for such petitioners, informed the district court he employed the word "abandoned" by mistake and intended to allege "consent" of appellee to the adoption. The petition for adoption, as previously stated, had been denied and the district court stated it preferred to hear appellee's own testimony on the subject of abandonment. Touching that subject appellee testified concerning his support of the child and the care thereof by himself and his parents as previously narrated. The trial court expressly found the evidence was insufficient to require a change of custody. In addition thereto it made some further oral comments to which we shall refer later.

The statement of a few fundamental principles governing cases involving a change in custody may be helpful. A decree awarding custody of a child is not *res judicata* in the sense generally applicable to judgments. It is *res judicata* only with respect to the facts and circumstances existing at the time of the original decree. The custody may be modified or changed whenever circumstances render a modification or change of the former order proper. (*White v. White,* 160 Kan. 32, 159 P. 2d 461; G. S. 1949, 60-1510.) The burden of proving a change in custody should be made rests upon the person requesting the change. (*White v. White,* supra.) Whether a change in custody should be ordered rests in the sound judicial discretion of the trial court in view of all the facts and circumstances of the particular case. (*Kogler v. Kogler,* 163 Kan. 62, 179 P. 2d 940.) On appellate review the decision of the trier of the facts will not be disturbed absent a clear showing of abuse of sound

judicial discretion. (*Kogler v. Kogler*, supra.) And this of necessity must be the rule. So in *Moloney v. Moloney*, 167 Kan. 444, 206 P. 2d 1076, we said:

"The trial court had the additional and highly important advantage over this court, which we have so often been compelled to recognize and state, of seeing the parties, observing their demeanor, assessing their character, weighing their testimony and considering the best interests of the children under all the circumstances. We have only the cold narrative of printed facts before us. It alone cannot possibly adequately portray the whole picture as witnessed by an able and discerning trial judge, the trier of the facts." (p. 448.)

There are too many intangible considerations and impressions, such as the spirit, the attitude, the disposition of the parties which eventually form a part of the trial court's ultimate decision to permit appellate courts to reverse a trial court where the bare printed facts might support a judgment awarding the custody to either parent.

Appellant stresses the recognized rule that a mother, absent a finding of unfitness, ordinarily is entitled to the custody of a child of tender years. We adhere to that rule. This court frequently has been confronted with such cases. It is unnecessary to review our numerous decisions on the subject. In *Travis v. Travis*, 163 Kan. 54, 180 P. 2d 310, it was well said:

"Appellant, however, does direct our attention to other authorities, which she contends supports the proposition that where she has not been found to be unfit, the custody of a young child should be awarded to her. We have examined these authorities, but no purpose will be served in analyzing each of them. It is correct to say that unless the mother is shown to be unfit, she may properly be awarded custody of her minor child. (19 C. J. 345; 17 Am. Jur. 517) but that premise does not necessarily result in a conclusion that an order giving custody to the father or providing for alternate periods of custody is erroneous." (p. 58.)

Obviously the foregoing statement is sound doctrine and must be the rule. If the rule were otherwise a trial court would be deprived entirely of exercising any discretion with respect to the best interests of the child where a child or children of tender years are involved.

In the instant case we are not favored with a record or a summary of the testimony adduced at the hearing of the divorce action and for the custody of the child. Although it is not our purpose to unduly stress the absence of such evidence we cannot escape the fact such evidence together with appellant's failure to appear at the trial, her unexplained failure to notify her attorney as to her whereabouts and her prompt marriage to another person before the six months'

period had expired were all proper facts to be considered with all other matters in determining the wisdom of a change in custody.

Of course, the fact appellant now has a home of her own and another child were proper considerations. But can we say those changed facts were entirely controlling? We do not think so. Was the fact appellee consented to the adoption of the child by his parents conclusive evidence against him? For all that appears in the record before us such adoption by his parents ultimately might have resulted in highly important benefits to the child in addition to his present care. At least appellee may have so believed. The trial court may have known appellee's parents intimately. It may have believed the child was extremely fortunate to be under their immediate care. Moreover, the father, appellee, was now also living in their home with the child.

At the conclusion of the hearing the trial court expressly stated appellant's evidence was insufficient to require a change of custody. It is true, as appellant contends, that in addition to that statement the trial court in commenting orally also mentioned some specific facts which entered into its consideration, such as the fact that this child of tender years "has got along mighty well with its grandparents here", and that appellant was remarried within less than two months after she was divorced by appellee, that her last husband was twenty-seven years her senior and that the child would be removed from the state if her motion was granted. We think these statements cannot fairly be interpreted as meaning they were the only facts the court considered.

Appellant criticizes the foregoing statements. We are especially reminded we have said the removal of children out of the state is secondary to their welfare. We have so held. (*Coats v. Coats,* 161 Kan. 307, 167 P. 2d 290.) Of course, that fact is *secondary* to the welfare of a child. Most single facts are *secondary* to a child's welfare. Clearly all the statement in the Coats case means is that if the welfare of a child is best served by placing its custody with someone outside the state then his mere removal from the state is secondary and does not in itself preclude granting custody to someone outside the state. Manifestly, however, it does not follow that the child's removal a short or long distance from those whom he has learned to love and in whom his affections have become centered and by whom he is being well cared for may not constitute a factor to be considered with others in determining whether there

should be a change of custody. We think the various matters specifically mentioned by the court were properly considered together with other facts in determining the best interests of the child.

It is true the court stated neither of the parents was unfit to have the custody of the child. The sole question that remained was therefore the best interests of the child in view of all the facts and circumstances of this particular case. The court found the facts were insufficient to warrant a change of custody. It must be remembered this court does not reverse an order of this character merely because it may entertain some doubt concerning the wisdom of the order. In the recent case of *Dodd v. Dodd,* 171 Kan. 46, 229 P. 2d 761, we definitely reiterated the well established principle governing cases pertaining to a change in custody and stated:

"Whether a child custody order will be changed or modified rests in the sound judical discretion of the trial court and its action with respect thereto will not be disturbed on appellate review unless the record makes it clearly appear that discretion has been abused." (Syl.)

We think from the record presented to us it does not clearly appear the court abused its sound judical discretion in denying the motion for a change of custody at this time.

The judgment is affirmed.

HARVEY, C. J., concurs in the result.

SMITH, J., not participating.