No. 40,051

BEVERLY LEACH, *Appellant,* v. JAMES C. LEACH, *Appellee.*

(296 P. 2d 1078)

Opinion filed May 5, 1956.

*Pat Warnick,* of Wichita, argued the cause, and *Alan B. Phares, William C. Norton* and *H. E. Pat Healy,* all of Wichita, were with him on the briefs for the appellant.

*Lee R. Meador,* of Wichita, argued the cause, and *Otto J. Koerner,* and *John N. Stice,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from an order denying plaintiff's motion to set aside an instrument, executed by plaintiff (hereinafter referred to as Beverly), referred to as a "Relinquishment" and to change the custody of the minor child of the parties.

The facts, so far as it is necessary to state here, are as follows: On September 3, 1952, defendant (hereinafter referred to as James) was granted a divorce from Beverly and awarded the custody of their small son, Lance Kerwin, for a period of six months; thereafter Beverly was given an opportunity to show her ability to take care of him. Neither party was found to be unfit to have his custody and control. The divorce decree granted the maternal grandparents the right of visitation and permitted them to have Lance in their home at stated intervals.

On August 15, 1952, two weeks before Beverly and James were

divorced in Sedgwick County, Beverly married Donald Hart in Yuma, Arizona. Hart was a member of the Naval Forces. Early in 1953, Hart was transferred to Pearl Harbor for duty, and Beverly went with him. Shortly after they arrived in Honolulu and on March 18, 1953, they were remarried since they "declared" their marriage in Yuma, Arizona, "illegal." They have made their home in Honolulu since that time.

On May 24, 1953, a son, Donald, was born; they are also the parents of a small daughter. Five months after the divorce was granted, Beverly returned to Wichita to visit her parents. While there, and on January 29, 1953, she agreed with James that he was to continue to have the custody of Lance until June, 1957, with the right of visitation by the maternal grandparents as provided in the divorce decree. The record does not disclose whether this agreement was submitted to or approved by the district court. Between March 16, 1953, and October 7, 1953, various motions were filed in the divorce action by the maternal grandparents for the citation of James, accusing him of contempt; seeking to change the order of custody, and to modify the order of custody. These were heard by the district court. Since they are not involved in this appeal no further mention will be made of them except to say Beverly was not present when they were heard, and the custody of Lance was not changed.

During October, 1954, Beverly again returned to Wichita to visit her parents and to see her son. She remained there until January 8, 1954, when she returned to Honolulu. During this visit she saw Lance and had him with her approximately one-half the time although he did not stay with her and her two children overnight. She made no objection to this arrangement. Beverly and James discussed the custody of Lance on several occasions. The result of these conversations was that on the evening before Beverly left Wichita to return to Honolulu, she took Lance to the home of James' parents in Wichita and while there signed and acknowledged an instrument entitled "Relinquishment." This instrument recites, in effect: that Beverly is of the opinion the best interest of Lance would be served if he is raised by James; that she "relinquish all her rights to said child," and agrees and consents that James be granted full custody and control of Lance; that she enters her appearance and waives notice of any motion filed by James to change custody of Lance in conformity with the Relinquishment,

and consents that the court enter an order giving James full custody, free from any right of Beverly or her parents.

On January 14, 1955, the district court, upon motion of James, granted him full custody of Lance, free from any right of Beverly or her parents. Previous orders of the court were modified accordingly. On February 12, 1955, Beverly filed a motion to place the custody of Lance with her, and to set aside the Relinquishment. This motion was fully heard by the district court on May 9 and 16, 1955, and denied. Beverly has appealed.

Beverly contends the district court erred in overruling her motion to set aside the Relinquishment and of refusing to change the custody of Lance from James to herself.

We shall first consider the legal effect of the so-called "Relinquishment." As we view this instrument it can only be considered as evidence of Beverly's inclination of what she believed to be the best interest and welfare of her son. That it is not a contract between the parties, is clear. At most, it is a statement by Beverly to the district court and to all parties concerned that she is of the opinion Lance's happiness and welfare will best be served if he lives with his father; she agrees that James be granted full custody of him, and consents that the district court may make an order placing her wishes in effect. That she had a right to advise the district court of her desire for Lance's welfare and best interest cannot be questioned, but she cannot, in this action, "relinquish all her rights to said child," as stated in the instrument. In the first place, children are not subject to gift as is property. (*Chapsky v. Wood,* 26 Kan. 650; *In re Kailer,* 123 Kan. 229, 255 Pac. 41; *Tucker v. Finnigan,* 139 Kan. 496, 32 P. 2d 211; *In re Jackson,* 164 Kan. 391, 190 P. 2d 426.) Secondly, nothing short of a finding of unfitness (G. S. 1955 Supp. 60-1510), a valid adoption decree (G. S. 1949, ch. 59, art. 21), or a juvenile court proceeding (G. S. 1949, ch. 38, art. 4), will deprive a parent, by his own act, of his right or permit him to escape his responsibility to his minor children. Thirdly, in a divorce action the district court, by statute (G. S. 1955 Supp. 60-1510), has full jurisdiction of the minor children of a marriage and is directed to make provision for their custody, support and education. This is a continuing duty. It is the court which grants or denies custody, not the parents. Neither may escape their parental duty by relinquishing to the other all rights to their minor children. Circumstances might arise which would necessitate a change of custody

from one parent to the other. In such event, the district court should be free to act as the circumstances require. In this case one of the parents was deprived of Lance's custody—the sad experience in many divorce cases—but the order is always subject to change, the burden being upon the other parent to show that custody should be changed. (*White v. White*, 160 Kan. 32, 159 P. 2d 461.) In *Duffy v. Duffy*, 176 Kan. 112, 268 P. 2d 931, we said:

".  .  . A court order conferring the custody of a child upon one parent or the other is not a finality in the same sense as a final judgment in an ordinary lawsuit. (*Janney v. Janney*, 159 Kan. 230, 232, 154 P. 2d 131; *Moloney v. Moloney*, 167 Kan. 444, 206 P. 2d 1076; *Kamphaus v. Kamphaus*, 174 Kan. 494, 256 P. 2d 883.) In an unbroken line of decisions of this court it has been held that the jurisdiction of the district court over custody of minor children in a divorce action is a continuing jurisdiction, and the court may on proper motion and notice modify and change any order previously made providing for such custody, whenever circumstances are shown which make such modification proper. (*Powell v. Powell*, 173 Kan. 435, 249 P. 2d 630; *Decker v. Decker*, 171 Kan. 380, 233 P. 2d 527; *Maston v. Maston*, 171 Kan. 112, 229 P. 2d 756, and other cases cited under G. S. 1949, 60-1510, and G. S. 1953 Supp., 60-1510.)" (p. 115.)

It is evident the district court concluded that Beverly signed the instrument freely and voluntarily; that she was fully aware of its purport, and that no undue advantage was taken of her. No doubt Beverly was anxious to make some permanent arrangement for Lance's welfare before she returned to Honolulu—at least so long as she was living outside the continental United States, and did so by advising the district court that James could have full custody of their son.

With respect to Beverly's contention the district court erred in denying that part of her motion to change custody, we adhere to the oft-times repeated rule of this court that whether the custody of minor children will be changed rests in the sound discretion of the district court, and unless the district court abuses its discretion, the rule will not be disturbed on appeal. In *Kamphaus v. Kamphaus*, 174 Kan. 494, 497, 256 P. 2d 883, the court said:

".  .  . It is elementary that whether a child custody order will be changed or modified rests in the sound judicial discretion of the trial court and that its order will not be disturbed on appeal unless the record clearly discloses the court abused its discretion. (*Dodd v. Dodd*, 171 Kan. 46, 229 P. 2d 761; *Bierce v. Hanson*, supra, p. 429.)"

The fact that Beverly is the mother of Lance; that she has not been found unfit to have his custody, and that he is a child of tender

years, does not necessarily entitle her to his custody. In *Bierce v. Hanson*, 171 Kan. 422, 427, 233 P. 2d 520, we said:

"Appellant stresses the recognized rule that a mother, absent a finding of unfitness, ordinarily is entitled to the custody of a child of tender years. We adhere to that rule. This court frequently has been confronted with such cases. It is unnecessary to review our numerous decisions on the subject. In *Travis v. Travis*, 163 Kan. 54, 180 P. 2d 310, it was well said:

"'Appellant, however, does direct our attention to other authorities, which she contends supports the proposition that where she has not been found to be unfit, the custody of a young child should be awarded to her. We have examined these authorities, but no purpose will be served in analyzing each of them. It is correct to say that unless the mother is shown to be unfit, she may properly be awarded custody of her minor child (19 C. J. 345; 17 Am. Jur. 517) but that premise does not necessarily result in a conclusion that an order giving custody to the father or providing for alternate periods of custody is erroneous.' (p. 58.)

"Obviously the foregoing statement is sound doctrine and must be the rule. If the rule were otherwise a trial court would be deprived entirely of exercising any discretion with respect to the best interests of the child where a child or children of tender years are involved."

The record has been thoroughly examined. We do not think the district court abused its discretion in denying Beverly's motion to set aside the Relinquishment or to change the custody of Lance. On the whole, we find no error in the case. The judgment is affirmed.

ROBB, J., not participating.