ROBERT E. LYERLA, APPELLANT, *v.* PEGGY SUE RAMSAY, RESPONDENT.

No. 5004

June 17, 1966                    415 P.2d 623

*Robert L. Gifford* and *Tad Porter*, of Las Vegas, for Appellant.

*Foley Brothers*, of Las Vegas, for Respondent.

## O P I N I O N

By the Court, THOMPSON, J.:

This appeal concerns post divorce child custody litigation in the courts of Kansas and Nevada. At the various times involved each court had due process jurisdiction to rule, as both parents appeared and the child was present within the state where a change in custody was sought. Halvey v. Halvey, 330 U.S. 610 (1947); cf. May v. Anderson, 345 U.S. 528 (1953). Each state, in rearranging custody, purported to act upon a change of circumstances occurring since the last custody order [in Kansas and Nevada child custody adjudications are modifiable upon a showing of changed conditions affecting the welfare of the child. Bierce v. Hanson, 171 Kan. 422, 233 P.2d 520 (1951); Osmun v. Osmun, 73 Nev.

112, 310 P.2d 407 (1957)], thereby avoiding possible conflict with the full faith and credit clause of the United States Constitution which does not foreclose a custody modification based upon a subsequent change of circumstances. Kovacs v. Brewer, 356 U.S. 604 (1958). We say "possible conflict" advisedly, for the United States Supreme Court has not yet precisely defined the protection afforded custody decrees by the full faith and credit clause [Ford v. Ford, 371 U.S. 187 (1962)], nor shall we attempt to do so here.

On December 7, 1959, a Kansas court granted Peggy Lyerla (now Ramsay) a divorce from her husband Robert, and custody of their two minor children, Bobby age 4 and Linda age 6, but allowed Robert weekend visitation rights and two months summer custody. On February 17, 1961, the Kansas court denied Robert's motion for a change of custody and granted Peggy's request to move the children to Las Vegas, Nevada, where she and her new husband established and still maintain a permanent residence. Since the summer of 1962 when Peggy denied Robert summer custody, they have been in continual litigation over the custody of their son Bobby.

The father sought to enforce his custodial rights under the Kansas decree by a habeas corpus proceeding in Nevada filed in June 1962. It is not useful to here record the full story of the subsequent litigation.[1] On three occasions, first in August 1962, then in June 1963, and finally on July 6, 1964, the Nevada court considered the opposing contentions of changed circumstances. Each time Nevada supported the Kansas custody disposition. On each occasion the father's custodial rights were recognized and enforced, and custody for ten months of the year remained with the mother. On July 28, 1964, just 22 days after the last mentioned Nevada adjudication, the Kansas court granted the father's modification motion and awarded him full custody of Bobby.[2] The mother disobeyed the court, took Bobby

[1]The record shows at least 26 separate appearances before six Nevada judges over a three year period.

[2]Bobby was present in Kansas visiting his father. The mother appeared and contested the motion to modify.

from the father and returned to Las Vegas, Nevada, where she sought full custody. On June 22, 1965, the Nevada court gave the mother full custody and limited the father to visitation at the Las Vegas home. The appeal is from this order.

1. At the outset we noted that on each occasion when the custody of Bobby was rearranged the court purported to do so because of a change of circumstances. Yet there is nothing in the record to show that a change of circumstances occurred between July 6, 1964, when Nevada ruled, and July 28, 1964, when Kansas vested full custody in the father. Therefore, it is clear that Kansas did not give the Nevada order the protection of full faith and credit. The very circumstances Kansas considered had been litigated and decided in Nevada just 22 days earlier.[3]

If full faith is to be accorded a child custody order, Kansas was without power to change custody on July 28, 1964, absent a showing of changed circumstances. That showing was not made. Therefore, we are free to disregard the Kansas order. State Tax Comm'n of Utah

---

[3]The Kansas Supreme Court narrowly construed the Nevada order as not touching custody and therefore not raising the issue of full faith. Lyerla v. Lyerla, 195 Kan. 259, 403 P.2d 989 (1965). Respectfully we disagree. But for the matter of custody, the Nevada court would not have acted. Custody was the core of that hearing. The very facts related as controlling on the face of the Nevada court's decree—Bobby's alleged maladjustment and his entry into military school—are the identical facts which Kansas looked to as "changed circumstances." No new circumstances were considered by Kansas.

Nevada considered all existing circumstances relevant to Bobby's custody. It was alleged before us that the father orally withdrew his prior motion for full custody. Even assuming such an informal, unrecorded action could be noticed, it is immaterial. The crux of custody is a consideration of changed circumstances. So considering, a court may be presumed to be deciding the total welfare of the child. Though Nevada here centered on summer visitation, it obviously also considered the fall by ordering Bobby returned. Certainly, the father could not *preclude* the court from so acting; rather he could only present circumstances which should dictate otherwise.

Finally, the father was fully represented and had notice of every Nevada appearance. Both counsel and the record so reveal. Cf. Lyerla v. Lyerla, supra, 403 P.2d at 992.

v. Cord, 81 Nev. 403, 404 P.2d 422 (1965) ; Bowditch
v. Bowditch, 314 Mass. 410, 50 N.E.2d 65 (1943).

2. On the other hand, if the Nevada order of July
6, 1964, is not to be given the protection of full faith
and credit by the Kansas court, still Kansas should have
abstained on the principle of comity for Nevada had
become the child's established home. The welfare of
Bobby is the paramount consideration in deciding cus-
tody. Bobby moved from Kansas in 1961 and has since
been living in Nevada. The evaluation of his physical,
emotional and educational needs should now be made by
the court having maximum access to the relevant evi-
dence. The Nevada court can best hear witnesses and
examine the environment in which Bobby is living
[Ratner, Child Custody in a Federal System, 62 Mich.L.
Rev. 795 (1964)] and is, in these circumstances, the
preferred forum for adjudication, though both Kansas
and Nevada possess the basic power to decide. There-
fore, we turn to review the pertinent Nevada orders.

3. The record shows that the order of July 6, 1964,
was made after a full hearing at which the court con-
sidered Bobby's alleged maladjustment, his entry into
military school and other matters bearing upon the issue
of custody. On the other hand, the later hearing of June
22, 1965, was concerned solely with support arrearages
and expense matters. Evidence was not received which
would authorize a change in the prior custody order of
July 6, 1964. Therefore we reverse the Nevada custody
order of June 22, 1965, as no showing was made to
justify it; we refuse to recognize the Kansas order of
July 28, 1964, for the reasons mentioned; and we
reinstate the Nevada custody order of July 6, 1964, that
is, the mother shall have custody of Bobby subject to
the right of the father to have Bobby's custody for two
months during the summer. The father shall pay all
transportation expense for Bobby incident to the exer-
cise of custodial rights.

We also reverse that part of the June 22, 1965, Nevada order which required the father to pay $400.23 to Peggy Ramsay for her travel expenses incurred in taking Bobby to Nevada. We cannot condone the recovery of travel expense, as Peggy removed Bobby from Kansas in violation of the Kansas order of July 28, 1964, and before its validity had been determined.

We affirm that part of the Nevada order of June 22, 1965, adjudging the father to be $1,012.50 in arrears in child support payments and ordering him to pay that sum. The record supports that finding.

We recognize that the practical effect of our decision allows Bobby to be returned to Kansas for two months in the summer. This may again provoke a new round of bitter litigation in the Kansas court. We, as Kansas, worry over Bobby's future. His welfare must govern. We believe it unwise in the instant circumstances to permanently deprive him of the company of either parent. Of course, we must rely in part upon Kansas viewing this matter as we do and recognizing that, since Bobby's established home is in Nevada, his welfare is best reviewed here. We would abstain from exercising jurisdiction and honor the decision of Kansas were the situation reversed.

WATERS, D. J., concurs.

WINES, D. J., concurring:

To the contention that the ruling of the Nevada court on July 6, 1964, determined the same issues raised by the motion in the Kansas court and is res adjudicata as to the question of custody and should be given full faith and credit, the Kansas Supreme Court answers and, I think, correctly:

"Again, reference must be made to the sequence of events. After Robert filed his motion of December, 1963, the Nevada court continued hearing thereon until after the end of the school year, and this continuance was still in effect on July 2, 1964, when the present action was commenced in Crawford County, Kansas.

"Meanwhile, however, and after Robert left Las Vegas with Bobby in June, 1964, Peggy had filed a motion in Nevada to cancel Bobby's visit to Kansas that year so that he might enroll in Elsinore's summer camp program. This motion was accompanied by affidavits of school officials attesting to Bobby's school record and the advisability of his attending camp. On July 6, 1964, four days after Robert's motion was filed in Crawford County, the Nevada District Court, without notice to Robert, entered the order which Peggy claims is res adjudicata.

"The phrasing of this order, viewed in the context of all attendant circumstances, permits little if any, doubt that it was made in response to Peggy's motion to terminate the summer visit. The limitations of space preclude us from reproducing the order in full but, in brief summary, it may be said that its pertinent provisions relate to summer visitation rights, to the parents' dispute over their son attending summer camp, and to affidavits and reports from Elsinore officials.

"We believe the Nevada court made no pretense of ruling on Robert's motion for change of custody, since its order contains no reference whatever thereto. Nor are we entitled to infer from any language used that the court intended to deal with the problem of permanent custody. Indeed, the presumption is quite the contrary, for Robert had not been advised that his motion was to be heard, although, as an interested party, he would be entitled to notice. The presumption is that public officers will perform their duties in a rightful manner and will not act improperly. We may not assume that the district court in Nevada would take the liberty of conducting a hearing on Robert's motion without giving him an opportunity to appear and be heard."

Despite my agreement with these findings and the rule on this issue, I am in accord with the conclusion appearing in Justice Thompson's opinion: "* * * Kansas should have abstained on the principle of comity for Nevada had become the child's established home. The welfare of Bobby is the paramount consideration in deciding custody. Bobby moved from Kansas in 1961 and has since been living in Nevada. The evaluation of

his physical, emotional, and educational needs should now be made by the court having maximum access to the relevant evidence."

This was the case law of Kansas prior to the enactment of K.S.A. 60–1610 except that the court spoke of domicile rather than "established home." See Lyerla v. Lyerla, 195 Kan. 259, 403 P.2d 989, 992.

I choose the "established home doctrine" not because it is the answer. Courts may disagree as trenchantly on what facts show an established home as they now do on what constitutes a change of circumstances. It has the virtue, however, of "maximum access to relevant evidence." Nor does it prevent a court having jurisdiction of the parents and the child, providing peremptory or emergency relief. Finally, finding the established home is a simple task when compared with the perplexities of finding a change of circumstances.

I concur in the orders made in Justice Thompson's opinion.