No. 124,454

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

STACEY A. LEWIS (f/k/a Bush),
*Appellee*,

and

GREGORY L. BUSH,
*Appellant*.

SYLLABUS BY THE COURT

A district court's jurisdiction over custody and parenting time ends once the child reaches the age of majority.

Appeal from Johnson District Court; JACQUELYN E. ROKUSEK, judge. Opinion filed June 10, 2022. Affirmed in part and dismissed in part.

*Gregory L. Bush*, appellant pro se.

*Erin B. Bajackson*, of Albano, Richart, Welch & Bajackson, LLC, of Independence, Missouri, for appellee.

Before ATCHESON, P.J., POWELL and WARNER, JJ.

POWELL, J.: Stacey A. Lewis (f/k/a Bush) and Gregory L. Bush divorced in 2012. They share one child, a daughter born in 2004. In May 2020, a physical altercation occurred between the child and Bush's wife, prompting Lewis to file a motion to modify parenting time and child support. Several months later, Lewis filed a motion to extend child support beyond the child reaching the age of majority as the child remained in high

school. After a trial on these two motions, the district court found a material change in circumstances had occurred and entered new orders as to parenting time and child support.

However, while this case has been on appeal, the child reached the age of majority in April 2022. As a result, we lost jurisdiction to enter any orders concerning custody and parenting time. Moreover, because Bush, as the appellant, has failed to supply us with the necessary record—specifically the transcript of the trial—to permit appellate review, we must reject his appeal of the district court's child support orders. Finally, we decline to address his allegations of bias against the district judge who heard the case because the required affidavit supporting such allegations was never filed, thus preventing our evaluation of its contents. Accordingly, we affirm in part and dismiss in part.

FACTUAL AND PROCEDURAL BACKGROUND

Lewis and Bush married in 2006. One child was born of their relationship, a daughter born in April 2004. Lewis and Bush divorced in 2012 in Johnson County, Kansas.

Under their divorce decree, Lewis and Bush were awarded joint legal and physical custody of their daughter with Lewis' residence designated as her primary residential address. Bush was awarded parenting time "in a two (2) week rotation, from Wednesday at 6:00 p.m. in Week 1, and Thursday at 6:00 p.m. until Sunday at 8:00 p.m. in Week 2. Additional parenting time was awarded on alternating holidays and for vacation periods." Bush was ordered to pay $683 of child support monthly.

While never memorialized in a subsequent parenting plan, because of the child's age, Lewis and Bush let her come and go between homes as she chose, rather than follow the court-ordered parenting plan. Bush alleges that the child spent approximately 80% (or

more) of her time at his home, although there is nothing in the record to support this claim.

In May 2020, "an inappropriate physical altercation occurred between stepmother and [the child]." The stepmother (Bush's current wife) testified that "during an argument when the child was cussing at her, that [the stepmother] lightly placed her fingertips on the back of [the child's] neck and gently directed the child's head where she wanted the child to look." The child's testimony regarding the event was taken in camera, so a record of her side of events is not available. However, the district court did not find the stepmother's description of events to be credible and deemed the physical altercation between the two as "inappropriate." Additionally, on Father's Day 2020, the stepmother and child got into a verbal altercation regarding the child support that Bush pays, which involved the stepmother yelling at the child about the purpose of child support. The child recorded this altercation, and it was played before the district court. However, that recording is not in the record on appeal.

The physical altercation led to the child choosing not to spend time at her father's house, and this hesitancy to spend time at her father's house increased after the verbal altercation in June. In fact, at the time of trial, the child and her father had had virtually no contact in a year. After the altercations the child "suffered from panic attacks as well as chronic heartburn and digestive issues due to the stress from the strained relationship" with her father.

In late June 2020, these events prompted Lewis to file a motion to modify parenting time and child support. In that motion she alleged the child's relationship with her stepmother had "become increasingly volatile, and as a result, the current court-ordered schedule is no longer in the child's best interests." Lewis also alleged the child's stepmother "regularly smokes marijuana in the presence of the minor child" and the child "consistently arrives late to school when staying with [her father] on school nights."

Additionally, the parents' incomes had changed more than 10% since the filing of the first order, and the child had begun participating in a competitive volleyball club, for which the fees were approximately $1,850 per year.

While this motion was pending, in March 2021, Lewis filed a motion to extend child support pursuant to K.S.A. 2020 Supp. 23-3001(b)(3). In the motion, Lewis indicated that the child would turn 18 years old in her junior year of high school because she repeated second grade. The child was on track to graduate in May 2023; therefore, Lewis requested child support be extended through May 31, 2023.

On May 19 and June 18, 2021, the district court conducted a trial on these two motions. The record on appeal contains no transcript of the trial. After considering the evidence presented, the district court amended the parenting plan, increased Bush's child support obligation, and extended that obligation until the child graduated from high school. Specifically, the district court limited Bush's parenting time to (1) two evenings per week from 5 p.m. to 10 p.m., unless the parties agreed otherwise so long as the child expressed an interest to participate in the same; and (2) alternating weekends on Saturday and Sunday from 10 a.m. until 6 p.m., so long as the child expressed an interest to participate in the same. Bush's child support obligation was increased to $1,120 per month and extended to May 31, 2023, after which the child would no longer be a high school student. Bush was also ordered to pay the majority of the child's volleyball club fees. Family therapy between the child and Bush was also ordered.

Bush timely appeals.

## ANALYSIS

It is important to note that Bush has appealed pro se and submitted his own brief without the benefit of counsel. Parsing through Bush's brief, it appears Bush first argues

4

that there was no material change in circumstances permitting the district court to modify the parenting time agreement. Specifically, Bush argues his statement that he would withhold funding the child's volleyball costs if she did not come over after the altercations between Bush's wife and the child did not supply "just cause" to modify his parenting time. Bush also argues that allowing his daughter to choose when she spends time with him "completely strip[s]" him of "any parenting ability."

Additionally, Bush argues the district court erred in its new child support calculation. And for the first time on appeal, Bush alleges the district judge had a conflict of interest because the judge also has a daughter who plays in the same competitive volleyball league as Bush's daughter.

I. DO WE HAVE JURISDICTION TO REVIEW THE DISTRICT COURT'S PARENTING TIME ORDER ONCE THE CHILD HAS REACHED THE AGE OF MAJORITY?

Before we can address the merits of Bush's claims on appeal, we must consider our jurisdiction to pass judgment on the district court's parenting time order because the child reached the age of majority in April 2022, after the district court's ruling but while this case has been on appeal. Although neither party addresses this issue in their briefs, it is our duty to question jurisdiction on our own. When the record discloses a lack of jurisdiction, an appellate court must dismiss the appeal. *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016). Whether jurisdiction exists is a question of law subject to our unlimited review. *Via Christi Hospitals Wichita v. Kan-Pak*, 310 Kan. 883, 889, 451 P.3d 459 (2019).

Generally, a district court retains jurisdiction in a divorce proceeding "over child custody issues until the child reaches the age of majority or emancipation." 25A Am. Jur. 2d, Divorce and Separation § 810. In Kansas, the age of majority is 18 years old. K.S.A. 38-101.

It appears that no binding authority in Kansas has dealt squarely with this issue. It seems assumed that a court's jurisdiction over parenting time ends once the child reaches the age of majority. Digging deep into opinions throughout the history of the Kansas Supreme Court and Court of Appeals reveals tacit conclusions and indirect statements in a handful of opinions that affirm the general statement that a court's jurisdiction over child custody and parenting time issues ends when the child reaches the age of majority.

In the late 1800s this commonsense notion is first articulated. In *Kendall v. Kendall*, 5 Kan. App. 688, Syl. ¶ 1, 48 P. 940 (1897), the panel held: "The jurisdiction of district courts over the guardianship, custody, support, and education of *minor* children in divorce cases is a continuing jurisdiction." (Emphasis added.) Over 50 years later, the Kansas Supreme Court echoed a similar sensible understanding. In *Selanders v. Anderson*, 178 Kan. 664, 667, 291 P.2d 425 (1955), the Supreme Court held that the district court that "granted custody of the *minor* children" to their father continued to exercise "jurisdiction over the children so far as their guardianship, custody, support, and education were concerned." (Emphasis added.) Similar mentions of a district court's jurisdiction of a parenting time award (then referred to as "custody") extending over minor children are found other cases. See *Nixon v. Nixon*, 226 Kan. 218, 220, 596 P.2d 1238 (1979) (analyzing the Uniform Child Custody Jurisdiction Act and holding: "[I]t is clear that the Wyandotte District Court had jurisdiction to entertain the original action for divorce, to award custody of the *minor* children, and to make provision for their support. Its jurisdiction to modify its custody and support orders is a continuing one so long as the children are *minors*." [Emphases added.]); *Goetz v. Goetz*, 181 Kan. 128, 134, 309 P.2d 655 (1957) ("[W]hen a petition for divorce is filed and a part of the relief sought is the custody and control of *minor* children, jurisdiction of the district court attaches immediately over the divorce action and the future welfare of the *minor* children during the pendency of the action and until final disposition thereof." [Emphases added.]); *Leach v. Leach*, 179 Kan. 557, 559, 296 P.2d 1078 (1956) ("[I]n a divorce action the district court, by statute G.S. 1955 Supp. 60-1510, has full jurisdiction of the *minor* children of a

6

marriage and is directed to make provision for their custody, support and education. This is a continuing duty." [Emphasis added.]).

Under the revised Kansas Family Law Code, K.S.A. 2020 Supp. 23-3001 et seq., there is no linkage of parenting time and child support; just because a parent is paying child support does not mean that such parent is entitled to parenting time. K.S.A. 2020 Supp. 23-3001(b). So, here, even though Bush's child support obligation extends past the age of majority and into the child's 19th year of life (because she was held back a year in school), there is no provision extending the district court's jurisdiction over parenting time even if Bush's child support obligation is extended. See K.S.A. 2020 Supp. 23-3001(b)(3).

Another panel of our court considered a factually similar issue to the one at hand in *In re Marriage of Wente*, No. 87,299, 2002 WL 35657646 (Kan. App. 2002) (unpublished opinion). In that case, the child turned 18 years old while the appeal of the father's denial of his request for residential custody was pending. The father's child support had been extended past her 18th birthday because she was still attending high school, which was then permitted under K.S.A. 2000 Supp. 60-1610(a)(1), now K.S.A. 2020 Supp. 23-3001(b)(2). The panel held that the child was "no longer a minor child and may choose her own residence. See K.S.A. 38-101." *Wente*, 2002 WL 35657646, at *3.

We agree with *Wente* and hold that while Bush's obligation to pay child support for his daughter continues after she has reached the age of majority, as permitted under K.S.A. 2020 Supp. 23-3001(b)(3), the district court's jurisdiction over parenting time and custody ended when the child reached the age of majority. Because the district court lost jurisdiction to enter any child custody and parenting time orders once the child reached the age of majority, any question concerning the propriety of its parenting time order in this case has become moot.

As a general rule, "Kansas appellate courts do not decide moot questions or render advisory opinions." *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). The mootness doctrine is one of court policy, under which the court is to determine real controversies about the legal rights of persons and properties that are actually involved in the case properly before it and to adjudicate those rights in a way that is operative, final, and conclusive. 311 Kan. at 590.

Because the child has reached the age of majority, she now has the right to choose her own residence and how often she sees Bush. Because the district court lacks the power to enter any parenting time orders, any opinion we would issue directing the district court to modify its parenting time order would be ineffectual and therefore moot. Accordingly, we dismiss Bush's appeal of the district court's parenting time order.

II.     DID THE DISTRICT COURT ERR IN ITS MODIFICATION OF BUSH'S CHILD SUPPORT
        OBLIGATION?

Next, Bush argues that the district court erred in its modification of Bush's child support obligation because it used Lewis' tax return information to calculate her income rather than her bank statements.

This issue is impossible to review because the transcript of the trial is not included in the record on appeal. Without the transcript, we are unable to engage in a meaningful review of the district court's child support order. While there are exhibits included in the record on appeal, there is no context for those exhibits, nor is it possible to know if all of the included exhibits were admitted and considered by the district court.

"An adequate factual record is required to conduct meaningful appellate review of an issue. A party challenging the ruling of the district court is responsible for developing an adequate record for appeal." *State v. Carr*, 314 Kan. 744, Syl. ¶ 19, 502 P.3d 511

8

(2022); see *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008) ("An appellant has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails. [Citation omitted.]"); Kansas Supreme Court Rule 3.03(a) (2022 Kan. S. Ct. R. at 22) (appellant's duty to request any transcripts necessary for appeal); see also K.S.A. 60-2104 (content and preparation of record on appeal governed by Kansas Supreme Court rules).

Bush alleges that he could not afford a transcript, but he does not point us to a location in the record on appeal where he even made a request for a transcript. The Appellate Clerk's System indicates that no transcript was requested. The absence of a transcript of the trial requires us to speculate about the district court's child support rulings, something we cannot do. See *Akesogenx Corp. v. Zavala*, 55 Kan. App. 2d 22, 42, 407 P.3d 246 (2017). Thus, we must reject Bush's challenge to the district court's child support orders.

III.     DID THE DISTRICT JUDGE HAVE A CONFLICT OF INTEREST?

Last, and for the first time on appeal, Bush argues the district court had a conflict of interest "[t]hroughout the court proceedings." Specifically, he alleges the district judge who heard the case had a conflict of interest because she has a daughter around the same age as Bush's daughter who also plays in the same volleyball club.

"'We exercise unlimited review over judicial misconduct claims, and review them in light of the particular facts and circumstances surrounding the allegation.' [Citation omitted.]" *State v. Boothby*, 310 Kan. 619, 624, 448 P.3d 416 (2019). The party alleging judicial misconduct has the burden of establishing that the misconduct occurred and that it prejudiced the party's substantial rights. *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018).

9

A litigant may argue that a judge's recusal is required in accordance with (1) the statutory factors set forth in K.S.A. 20-311d(c); (2) the standards of the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 (2022 Kan. S. Ct. R. at 495); and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Moyer*, 306 Kan. 342, 370, 410 P.3d 71 (2017).

A party or a party's attorney may move for a change of judge based on the belief "that the judge to whom an action is assigned cannot afford that party a fair trial in the action." K.S.A. 20-311d(a). "Under K.S.A. 20-311d, a party must first file a motion for change of judge; if that motion is denied, then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute." *State v. Sawyer*, 297 Kan. 902, 908, 305 P.3d 608 (2013). Moreover, our Supreme Court has refused to consider bias claims on appeal when the claimant has failed to follow the proper statutory procedure, concluding that a claimant's failure to file an affidavit barred it from evaluating the judicial bias claim. *Moyer*, 306 Kan. at 371-72.

Here, there is nothing in the record to show that Bush followed the statutory procedure by filing an affidavit setting forth his allegations of judicial bias. Because he has not done so, "we cannot 'decide the legal sufficiency of the affidavit.'" 306 Kan. at 372. Thus, we decline to consider Bush's judicial bias claims.

Affirmed in part and dismissed in part.

10