228

JOHN R. MARCHI, JOAN T. MARCHI, LEIF ERICKSON, HUBERTA ERICKSON, Plaintiffs and Appellants, *v.* O. L. BRACKMAN, as Mayor of the City of Helena, CITY COMMISSIONERS and THE MONTANA POWER COMPANY, Defendants and Respondents.

No. 9541.

Submitted November 10, 1955. Decided June 27, 1956.

299 Pac. (2d) 761.

Mr. John R. Marchi and Mr. Leif Erickson, Helena, pro se.

Messrs. Weir, Gough & Matson, Helena, for Montana Power Co.

Mr. David R. Smith, City Atty., Helena, for City of Helena.

Mr. Erickson, Mr. Marchi and Mr. T. B. Weir argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiffs brought this action to enjoin the defendants from proceeding with the installation of lighting structures in a special improvement district described in the complaint. Upon the filing of the complaint a temporary restraining order and an order to show cause issued, restraining the installation until the further order of the court and requiring the defendants to appear before the court at a fixed time to show cause why they should not be permanently restrained from proceeding with the lighting project.

Defendants filed motions to strike most of the allegations from the complaint and the defendant Montana Power Company filed a motion to quash, vacate and set aside the restraining order. After hearing the court entered an order granting the motions to strike and the motion to quash.

Plaintiffs have appealed from that order.

The proceedings sought to be enjoined by the complaint were proceedings taken by the city council of the City of Helena to create a special improvement district for lighting streets under R.C.M. 1947, section 11-2245 et seq. Most of the complaint is directed at an attack upon the contract made by the city council with the Montana Power Company under section 11-

2252. After the appeal was perfected the Montana Power Company entered into an agreement with the city council whereby the contract was cancelled and rescinded. Because of that fact the defendants moved for a dismissal of the appeal upon the ground that the questions involved have become moot by reason of the cancellation of that contract. Thereafter defendants filed the following withdrawal of objection from the motion to dismiss the appeal:

"In order that this appeal may go to the question of the power of the respondent City of Helena to subscribe for the street lighting service offered it by the respondent, The Montana Power Company, respondents do now withdraw from their Motion to dismiss the appeal, the objection that the Orders of the District Court specified in the Notice of Appeal, are not appealable under the statutes."

In the state of the record there is some uncertainty as to what is before this court for consideration. The contract made between the city council and the Montana Power Company has been cancelled and we are not advised as to what contract, if any, took its place. The resolution creating the district is still in effect and under it and the statute the defendants are obliged to make another contract.

R.C.M. 1947, section 11-2252, provides in part that: "The lights in each district shall be maintained by contract for such period of time and in such way or manner as the city or town council shall elect; provided, however, that the city or town council shall not let a contract for a period to exceed three (3) years." The resolution creating the district provides that, "The mayor and the Clerk of the Commission of the City of Helena, Montana, are hereby authorized and directed to enter into a contract with the Montana Power Company for the installation of the herein described improvements and for the maintenance thereof."

The contract attached as an exhibit to the complaint having been cancelled, we of course cannot be expected to determine its validity. But issues are still tendered by the allegations

stricken from the complaint as to the validity of the resolution creating the district if the allegations of fact are material to the statement of a cause of action.

In response to the order to show cause why the temporary restraining order should not be made permanent, defendants filed the motion to strike and nothing more. Hence, the only cause for refusing the injunction on the record before us is the motion to strike. The order granting the motion to strike and dissolving the restraining order was, in effect, an order refusing to grant an injunction. From that order an appeal to this court lies. R.C.M. 1947, section 93-8003, and State ex rel. Olsen v. 30 Club, 124 Mont. 91, 219 Pac. (2d) 307.

Hence we have before us the question whether the court erred in sustaining the motion to strike. The allegations stricken question the validity not only of the contract but of the resolution creating the special improvement district.

No useful purpose would be subserved in setting out the stricken allegations in full here. It is sufficient to say that the allegations are pertinent and material to the statement of a cause of action if plaintiffs' hypothesis is correct that section 11-2245 et seq. have to do only with a municipally owned lighting plant or if the proceedings taken by defendants contemplated such a project. Defendants contend however that the statutes are sufficiently broad to authorize the creation of an improvement district to provide for the maintenance of an electric lighting system and the furnishing of electrical current to the system, constructed and owned by a private corporation and that such is the character of the district attempted to be created here.

R.C.M. 1947, section 70-301, expressly empowers an electric light or electric power line company to install appliances necessary for service along and upon public roads and streets, and section 11-909 gives the city council power to provide for the lighting of streets, alleys and avenues.

Reading sections 70-301 and 11-909 with the statutes relat- to the creation of special improvement districts it

seems to us that an improvement district may be created for the purpose of maintaining a system owned by a corporation or individual and the furnishing of electrical current therefor.

[3] The statutes quite clearly authorize an improvement dis- for such purposes as well as for installing a system and it does not appear to have been the legislative intent that the purposes might not be separated and a district created merely for the purpose of maintaining the system and furnishing the electrical current therefor. It has been held that it is proper to assess the cost of furnishing electrical current to property in a special improvement district. Ankeny v. City of Spokane, 92 Wash. 549, 159 Pac. 806, L.R.A. 1917A, 1093. If there be no cost to the property owners in erecting the posts, wires and other needed appliances, then there is no occasion to resort to section 11-2249 by the issuance of warrants or bonds.

[4] It is a fact question as to what character of improvement dis- is here attempted which in turn depends upon the truth of the allegation in plaintiffs' complaint that "the amount to be charged the city and the property owners includes an item to retire the construction costs of said structure over a fifteen year period." For the purpose of the motion to strike, this allegation must be accepted as true. Paramount Publix Corp. v. Boucher, 93 Mont. 340, 19 Pac. (2d) 223. In legal effect this allegation is equivalent to a statement that the Montana Power Company advances the cost of installation initially rather than proceeding under section 11-2249 to issue bonds or warrants. The power company is then repaid the installation cost over a fifteen-year period.

Defendants' position is that the power company is entitled to depreciation in the fixing of its rates and that the plan here attempted accomplishes this result, and that if the rate be excessive relief must be sought before the board of railroad commissioners. This depends upon the question as to who actually bears the construction costs of the lighting system. If the system be owned by the municipality as contended by plaintiffs, then it is at least doubtful whether the public service

commission would have anything to say regarding the rates in view of section 36 of Article V of our Constitution. Compare Town of Holyoke v. Smith, 75 Colo. 286, 226 Pac. 158, and People ex rel. Public Utilities Commission of State of Colorado v. City of Loveland, 76 Colo. 188, 230 Pac. 399.

We do not pass upon this point at this time since we have not yet learned what type of system is proposed to be constructed—whether municipally or privately owned. That is one of the issues between the parties. If the lighting system be constructed and owned by the Montana Power Company, then the rate should be fixed and determined after maintenance charges and depreciation are taken into account. It is not proper to fix the rate for supplying the electrical current which would and should be fixed after allowing for depreciation, and then at the same time have a separate maintenance charge which was not considered in establishing the rate. Such a plan would be allowing double charge for depreciation or perhaps more since the service life of most of the lighting facilities would probably greatly exceed 15 years.

The proper method of dealing with depreciation and maintenance [5] charges is explained in the well considered opinion in Lindheimer v. Illinois Bell Tel. Co., 292 U.S. 151, 54 S.Ct. 658, 78 L.Ed. 1182, in which it is made plain that maintenance charges may be sufficiently high that it would result in very little depreciation. Here the resolution creating the district recites that there is proposed to be eighty-six 4000 lumen fixtures on steel poles and thirteen 2500 lumen fixtures on wood poles in the district. The monthly charge for supplying current and maintaining each of the 4000 lumen fixtures, according to the resolution, is $2.89, and for each of the 2500 lumen fixtures $1.26. But according to the rate schedules on file in the office of the public service commission, of which we take judicial notice, R.C.M. 1947, section 93-501-1, the charge for supplying electrical energy monthly for each 2500 lumen fixture is $0.61 and for each 4000 lumen fixture is $0.89. Hence about 68 per cent of the entire cost for maintaining the system

here proposed and supplying the current goes for maintenance. We are not advised as to how the maintenance costs and expenses are calculated and determined except that the above allegation charges they include "an item to retire the construction costs of said structure over a fifteen year period."

It is our conclusion that the court erred in sustaining the ▮▮▮ motion to strike without going to a hearing upon these and other factual issues tendered by the stricken allegations which do not appear to be immaterial, sham or otherwise subject to a motion to strike. It cannot be said that plaintiffs have an adequate remedy before the public service commission even though the case be one wherein that board may fix the rate. Initially the city council must fix the rate as well as the cost of maintenance. R.C.M. 1947, section 11-2252, paragraph 1, and section 11-2247, paragraph 7. Whatever rate is fixed by the city council must stand until it is changed by the public service commission, and as against excessive charges plaintiffs have no right of reparation. Montana Citizens Freight Rate Ass'n v. Board, 128 Mont. 127, 271 Pac. (2d) 1024. Plaintiffs are entitled in these proceedings to have the city council proceed under the statutes to have proper charges fixed initially so far as that may be done under the law.

By R.C.M., 1947, section 11-2247, the posts in an improvement ▮▮▮ district are required to be of "uniform size and character and shall be distributed uniformly." It is alleged that this requirement is proposed to be ignored. Defendants in their brief contend that the lack of uniformity is occasioned by the fact that different sized poles are proposed to be used in the alleys than in the streets. If there be a bona fide issue regarding this point, it too should not be determined on a motion to strike.

There were allegations stricken from the complaint to the ▮▮▮ effect that the proposed improvement will necessitate the excessive trimming of trees and shrubbery in the area and result in decreasing the value of plaintiffs' property. These allegations fail to make it clear just how plaintiffs' property

is damaged, since it is not alleged that any of the trees or shrubbery are on their property, but they are not subject to a motion to strike. It is possible that plaintiffs may connect up the damage to their property by proof, or may see fit to amend the allegations in that respect.

We do not question the principles of law stated in the dis- opinion, but question their applicability here at this stage of the proceedings. If upon the trial it developed that the installation costs are to be paid by the property owners then some of those principles would have application. If the Montana Power Company installs the lighting system without cost to the property owners then we fail to see how they are in a position to complain that warrants or bonds were not issued bearing interest as provided in section 11-2249, and that their property is not therefore to be assessed for the installation costs as provided in section 11-2251.

And if there is to be no installation cost to the property owners ██ it is of no consequence that bids were not called for under section 11-1202, which has to do with contracts for supplies etc., ''for which must be paid a sum exceeding one thousand dollars ($1000.00)''. The same is true as to maintenance charges. Section 11-2252, supra, is a special statute giving the city council plenary authority to contract for the maintenance of the lights in the district for a period of not more than three years ''in such way or manner as'' the council may elect. Under such a statute there is no room for the application of section 11-1202 which is a general provision reaching cases for which specific provision otherwise is not made. In re Wilson's Estate, 102 Mont. 178, 195, 196, 56 Pac. (2d) 733, 105 A.L.R. 367. For to apply section 11-1202 here is to that extent to nullify the discretion specifically given the council in contracting for the maintenance of a lighting district, i. e., by section 11-2252. Of course, the contract made consistent with this latter statute may not be for a period exceeding three years; and too, the special improvement district created under section 11-2245 for the purpose of lighting the streets included within

its boundaries may not be utilized to require the payment of maintenance costs, which in truth and in fact are not the cost of maintenance at all, but are rather designed to reimburse the power company for its own costs incurred in installing its own lighting system as is the import of the allegations of the complaint which have been stricken.

In short the difficulty met in disposing of this appeal is encountered because of the factual uncertainties inherent in this record. Until we are advised precisely what contract is closed between the parties, and where the truth of the factual issues raised in the light of that contract is to be found, neither this court nor the district court is in position to decide the controversy here, primarily, because no one knows yet either the facts from which the controversy comes nor the shape which it will assume when the facts are known. In such a situation it is pecularily appropriate that the case should go back to the district court with directions to set aside its order striking from the complaint and to proceed thereafter in the usual way to a trial that the facts involved may be fully developed before any ruling on the merits is made. We have no case here which properly may be decided upon the complaint alone and without opportunity for defendants to plead or be heard on the merits.

Here, if then the plan proposed is permissible under our statutes, and we think such a plan may be proposed as will meet at all points the requirements of the statute, then the situation is exactly the same as is the case where any other public utility furnishing services to residents of a city such as a gas company furnishing its own line would be.

The cause is remanded with directions to set aside the order sustaining and to enter an order overruling the motion to strike, to reinstate the restraining order *pendente lite* and to allow defendants a reasonable time to plead to the complaint to the end that issues may be framed and a trial thereof had on the merits.

MR. JUSTICES ANDERSON and DAVIS, concur.

MR. JUSTICE BOTTOMLY:

I concur in part and dissent to most that is said in the majority opinion and especially with the disposition of this case.

The plaintiffs as resident freeholders within the proposed district brought this action to enjoin the defendants, the mayor, the city commissioners of the City of Helena, and the Montana Power Company, a corporation, from proceeding with the installation of lighting fixtures and appliances in the city's designated special lighting district No. 190, and the removal of the present existing lighting system therein, under Resolution of Intention No. 5229, which was finally passed March 22, 1954, and the city's resolution No. 5259, purporting to create the special improvement lighting district No. 190, which was finally passed June 28, 1954. The trial court issued and caused to be served a temporary injunction against defendants.

Defendants filed motions to strike most of the complaint and the defendant Montana Power Company also moved to quash and vacate the injunction. After hearing had all motions were sustained. This appeal is from the order dissolving the injunction.

The City of Helena, through its council, proceeding under R.C.M. 1947, section 11-2245 et seq., which statutes provide a special procedure for the special purpose of authorizing city and town councils and commissions to create special improvement lighting districts and the installation of the necessary facilities, by its Resolution of Intention No. 5229, *declared its intention to create and establish a special lighting district No. 190,* in the City of Helena, for the purpose of making special improvements upon and along portions of certain named streets and alleys therein and erecting and installing special lighting improvements, 84 4000-lumen incandescent fixtures on steel poles and 13 2500-lumen incandescent fixtures mounted on wood poles, all mounted at a height of 25 feet and served by a single overhead wire.

The preliminary resolution further specifies the boundaries of the proposed special lighting district and also states: "That it is agreed that in accordance with State law, *the City of Helena agreed to assume 25% of the cost of said lighting,* the balance of 75% will be assessed to the property owners within the district, payable annually on a pro-rated basis equally according to the square footage owned by each property owner * * * That the Montana Power Company shall install the above lighting without initial installment cost and the yearly cost of maintenance will be $3,179.04 for the entire district." Emphasis supplied.

The proposals, terms, conditions and method, contained in said preliminary Resolution of Intention No. 5229, were carried over into Resolution of Intention No. 5259 which the City of Helena, through its city commission, first passed June 14, 1954, and finally passed June 28, 1954. Said Resolution No. 5259 purported *to create special lighting district No. 190* in accordance with the Resolution of Intention, but going further and authorizing and directing the mayor and city clerk of the council or commission to enter into a contract with the Montana Power Company, a corporation, for the furnishing of the materials and installation of the improvements to be made in the special improvement lighting district No. 190.

The injunction was to enjoin and prevent the defendants from taking further action or proceeding under or pursuant to the aforesaid resolutions.

Here the city commission of Helena has proceeded under R.C.M. 1947, section 11-2245 et seq., and by said resolutions has attempted to create a special improvement lighting district No. 190, also providing in said resolution for the installation therein of all necessary parts, wires, conduits, lamps and other necessary equipment, along with the maintenance thereof and the furnishing of the energy necessary therefore, and thereby the removal of the existing lighting system now owned by the taxpayers and city.

It is the contention of plaintiffs that Resolution of Intention

No. 5229 and Resolution No. 5259 are void for the reason that the city commission had no lawful authority or power by said resolutions to turn over to any individual or corporation the installation of the lighting fixtures without submitting the same for advertisement and public bid for a contract for the furnishing and installing of said fixtures, with a limitation thereon of not more than three years as made mandatory by R.C.M. 1947, section 11-1202. It is further contended that the city commission did not ascertain the cost separately for the installation of such lighting system nor did it create a "special fund" into which the money collected therefor shall be paid, as made mandatory by R.C.M. 1947, section 11-2251; that the city commission made no provision for a separate determination of the costs of maintenance, nor a special contract therefor with a specific limitation of said contract to a three-year period, nor a special "maintenance fund" for said district into which the tax therefor be paid as required by R.C.M. 1947, section 11-2252; that the city commission did not provide in said resolutions for the payment of all costs and expenses of the improvements and construction in the special improvement lighting district by special improvement district bonds or warrants as the mandate of R.C.M. 1947, section 11-2249 requires.

It should be noted that these proceedings have for their ultimate purpose the subjection of the property within the special improvement district to taxation and assessment to bear 75% of the cost of the improvements and all of the property in the City of Helena to bear 25% of the cost of the improvements in said district No. 190.

These statutes, R.C.M. 1947, sections 11-1202 and 11-2245 to 11-2255, being special statutes for a special purpose, set forth in mandatory and particular terms the procedure that must be followed by a city council or commission in order for the council or commission to lawfully proceed and lawfully perfect such a district. These statutes are in *in vitum,* and in recognition of these facts the legislature has provided a complete and direct plan of procedure designed to protect prop-

erty from confiscation and at the same time permit beneficial improvements to be made. The legislature clothed the city council or commission only with limited powers and no presumption in favor of its jurisdiction will be indulged. The statutes measure its authority and compliance with the terms of the statute is a condition precedent to its right to act. The authorities here, as elsewhere, are quite uniform in holding that statutes of this character are mandatory, and no argument however specious can excuse a failure to observe their mandate. Compare Johnston v. City of Hardin, 55 Mont. 574, 579, 581, 179 Pac. 824; Hinzeman v. City of Deer Lodge, 58 Mont. 369, 193 Pac. 395.

The following constitutional provisions are both mandatory and prohibitory:

Section 1 of Article XIII provides, as far as pertinent here, that ''Neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation * * *.''

Public tax funds may not be used in aid of a private business. It is not the use to which tax money may be put, but the restriction is the nature or capacity of the recipient. See Cramer v. Montana State Board of Food Distributors, 113 Mont. 450, 129 Pac. (2d) 96. The purpose and design of the restrictions placed in section 1 of Article XIII were to prevent the use of public funds raised by tax levies from being used in aid of enterprises apparently designed and devoted to quasi-public purposes, but actually engaged in private business. Compare Thaanum v. Bynum Irr. Dist., 72 Mont. 221, 232 Pac. 528.

Section 36 of Article V provides, as far as pertinent here, that ''The legislative assembly shall not delegate to any * * * private corporation or association, *any power to make,* supervise or interfere with any municipal improvement * * * or

to levy taxes, or to perform any municipal functions whatever." Emphasis supplied.

The general rule is stated in 63 C.J.S., Municipal Corporations, section 1297, page 1040: "The extent of the power to levy special assessments for local improvements and the manner of its exercise *are to be determined solely by the legislation conferring the power, and ordinarily such legislation is to be construed strictly as against the municipal corporation and liberally in favor of the property owner.*" Emphasis supplied. In the same authority, section 1052, page 673, it is said that "a municipality's statutory authority to build and operate a light system is a right which cannot be contracted away * * *."

In 37 Am. Jur., Municipal Corporations, section 118, page 732, the rule is stated thus: "The same restrictions which rest upon the state legislature as to the delegation of legislative powers and functions conferred upon it by the Constitution are held to rest upon a municipal corporation as to powers granted it by the legislature. It follows that a municipal corporation cannot delegate to private individuals or corporations any of the governmental legislative or discretionary functions confided to it by the legislature."

Cities and towns are simply political subdivisions of the state for governmental purposes, and have only such power as granted by the legislature. See State ex rel. Rocky Mountain Bell Telephone Co. v. Mayor, etc., of City of Red Lodge, 30 Mont. 338, 76 Pac. 758; State ex rel. Quintin v. Edwards, 40 Mont. 287, 303, 106 Pac. 695, 20 Ann. Cas. 239; State ex rel. City of Butte v. Police Court, 65 Mont. 94, 100, 210 Pac. 1059; Stephens v. City of Great Falls, 119 Mont. 368, 371, 175 Pac. (2d) 408.

In state ex rel. City of Billings v. Billings Gas Co., 55 Mont. 102, 173 Pac. 799, 800, this court said:

"A city of this state has only such authority as is conferred upon it by express legislative declaration or by necessary implication (Helena Light & R. Co. v. City of Helena, 47 Mont. 18, 130 Pac. 446), and any doubt as to the existence of a particu-

lar power will be resolved against the city, and the right to exercise the power denied. State ex rel. Quintin v. Edwards, 40 Mont. 287, 106 Pac. 695, 20 Ann. Cas. 239.

''Since a city exercises only limited, delegated authority, anyone claiming the benefit of the city's act has the burden of showing that it acted within the scope of its authority.'' Compare Morse v. Kroger, 87 Mont. 54, 285 Pac. 185; Broadwater v. Kendig, 80 Mont. 515, 261 Pac. 264.

In Carlson v. City of Helena, 39 Mont. 82, 109, 102 Pac. 39, 47, Chief Justice Brantly speaking for the court said, ''Whenever a power is conferred upon a municipality, *and the mode of its exercise is pointed out, this mode must be pursued.''* Emphasis supplied. State ex rel. Daly v. Dryburgh, 62 Mont. 36, 203 Pac. 508; State v. Stark, 100 Mont. 365, 52 Pac. (2d) 890. ''The reason for the rule is that it must be presumed that the state has granted in clear and unmistakable terms all that it intended to grant at all.'' State ex rel. Quintin v. Edwards, supra, 40 Mont. at page 303, 106 Pac. at page 699; Shapard v. City of Missoula, 49 Mont. 269, 279, 141 Pac. 544.

In Ford v. City of Great Falls, 46 Mont. 292, 309, 127 Pac. 1004, 1009, Chief Justice Brantly speaking for the court said: ''If the statute granting the power also prescribes the procedure which must be pursued, this procedure is the exclusive guide.'' In the same case, 46 Mont. at page 313, 127 Pac. at page 1011, it was said: ''Our statute [section 3278, Codes of 1907, now R.C.M. 1947, section 11-1202] requires that all work necessitating the expenditure of a sum exceeding $250 [now $1,000] shall be let by contract to the lowest responsible bidder. *This requirement extends to and includes expenditures made from the general revenues of the municipality as well as from funds derived from special assessments.''* Emphasis supplied. Here the mode of the exercise of the power is minutely pointed out by the legislature.

Here there was no compliance nor attempted compliance with R.C.M. 1947, section 11-1202, by the city commission. The resolution speaks for itself. There was no advertisement for

bids; there were no bidders; there was no letting of a contract to construct, erect and install the appliances for the lighting district to the lowest responsible bidder as required nor any limitation of the contract period. In fact, this section 11-1202 was completely ignored by the city commission.

The legislature has granted to city and town councils and commissions the power and authority to create special improvement lighting districts, and the methods of financing the costs of the required fixtures, poles, wiring, lights and other necessary equipment, and the installation of the same. This power and authority is granted under a series of statutes which prescribes the power so delegated and directs minutely and with great particularity each step in the proceedings and mode that a city or town council or commission *must* take and follow in order to *acquire and retain jurisdiction to proceed to a completed legal special improvement lighting district.* Compare Stadler v. City of Helena, 46 Mont. 128, 127 Pac. 454; State ex rel. Quintin v. Edwards, supra. See 1 Dillon, Municipal Corporations, 5th Ed., section 237, page 448 et seq.

The statutes limiting, governing and controlling city and town councils and city commissions in the creating, financing and operating special improvement lighting districts are R.C.M. 1947, sections 11-2245 to and including 11-2257. These are special statutes enacted by our legislature for the special purpose of authorizing cities and towns to create and install the fixtures in special improvement lighting districts and establish the public policy of the state in this matter. From the reading of these statutes and the history of the legislation, it is apparent that the city or town council or commission in exercising such governmental power so delegated is acting as an agency and subdivision for and of the state; that it is required by statute, where the city does not do the work itself, that any installation of the poles, parts, wires, pipes, conduits, lamps or lighting equipment shall be by contract, under competitive bid to the lowest responsible bidder, R.C.M. 1947, section 11-1202, as amended by Chapter 139, Laws of 1949; Ford

v. City of Great Falls, supra; that the costs thereof shall be assessed as provided by section 11-2251, and that all money derived from the collection of the assessments and tax shall constitute a fund to be known as "Special Improvement District No. 190 Fund"; that the improvements shall be owned, controlled and at all times under the direct supervision of the city or town.

This is made plain by R.C.M. 1947, section 11-2249, which provides, "*All costs and expenses* incurred in the construction of the improvement specified in this act *shall be paid for by special improvement lighting district bonds or warrants,* in such form as may be prescribed by ordinance drawn against a fund to be known as 'Special Improvement Lighting District No. .... Fund.' Said warrants or bonds shall be in the denomination of one hundred dollars or fractions or multiples thereof; and may be issued in installments. Such warrants or bonds shall be redeemed by the treasurer when there is money in the fund against which said warrants or bonds are issued available therefor, and may extend over a period *not to exceed eight years,* and shall bear interest at a rate not exceeding six per cent (6%) per annum from the date of registration thereof, until called for redemption or paid in full, interest to be payable annually on the first day of January of each year as expressed by the interest coupon attached thereto, which may bear the engraved facsimile signature of the mayor and city clerk. *The requirements of this section shall apply to all special improvement lighting districts, including those now in the process of formation or to be formed hereafter."* Emphasis supplied.

The property owner affected may always complain where as here the city commission fails or refuses to perform its duties and assume the responsibilities as required by the law involved. Every child knows there is a cost incurred to install such fixtures.

It is pertinent and should be noted that the italicized last sentence of the foregoing section 11-2249 was amended into that section by Chapter 55, Laws of 1947. These controlling

statutes were not even attempted to be complied with, but were completely overlooked or ignored by the commission in its proceedings in this matter.

There is a very good reason for each of the legislative provisions; the people who are going to pay for the improvement want to know what the entire cost of the installation of the improvement will be, and the amount that will be assessed against each lot or parcel, and the length of time such assessment will be imposed upon their property until the cost of such installation will be fully paid, and the installation owned by the municipality, which means that it will be owned by the people themselves.

Owners of land within or without the boundaries need this information so as to advise prospective purchasers. Furthermore, all of the taxpayers of the city want to know for what period of time they will be assessed for their proportionate share of the 25 % of the cost of such a special improvement lighting district.

The law requires that after the contract has been let for the installation of the lighting system for such a district, the city or town council shall ascertain the costs of such installation, and adopt a resolution assessing the property in the district as provided by R.C.M. 1947, sections 11-2251 and 11-2246. After such lighting system improvements have been installed, as pointed out above, the city or town council may then by contract provide for the furnishing of electric current and the maintenance of the lights thereof as provided by R.C.M. 1947, section 11-2252.

Section 36 of Article V of our Constitution, supra, prohibits the legislature and thereby prohibits its agencies and subdivisions, the town or city council or commission in this instance, from delegating any power to any special commission, association or corporation to construct and own any such municipal improvement. The city cannot transfer to an individual or quasi-public corporation, or to any other entity, for its own use and profit, the power and authority which the statutes

allow to be used only by the city for the public benefit. Compare Bennett v. Winston-Salem Southbound R. Co., 170 N.C. 389, 87 S.E. 133, L.R.A. 1916 D, 1074.

Where, as here, the legislature has conferred upon a city or town council or commission the power and authority to create a special improvement lighting district and the authority to install the needed fixtures therein and the management thereof, such delegated power and authority is a public trust that only the council or commission may exercise, and then only as prescribed by law. This public duty of exercising such governmental power may not be evaded, conferred, assigned or delegated to any other entity. Compare State ex rel. Nelson v. Timmons, 57 Mont. 602, 189 Pac. 871; Shapard v. City of Missoula, supra; Bidlingmeyer v. City of Deer Lodge, 128 Mont. 292, 274 Pac. (2d) 821, 823.

The very purpose of the legislature in minutely prescribing in detail each step to be taken by a city or town council or commission in creating special improvement lighting districts and the installation of the improvements was to protect the taxpayer, avoid uncertainty and costly litigation.

Under the resolution and plan here the city council or commission would simply be turning over its governmental duties and public tax money to a corporation which would be assuming and exercising the governmental power and functions which the legislature strictly delegated to the city council and commission. Compare State ex rel. Browning v. Brandjord, 106 Mont. 395, 81 Pac. (2d) 677; Dickey v. Board of Com'rs, 121 Mont. 223, 191 Pac. (2d) 315.

The city commission, under its resolutions, would be levying a tax on all the property in the City of Helena to make up the 25 % of the cost of the installation in special improvement lighting district No. 190. The recipient thereof would be a private corporation, exercising governmental power in its construction, ownership and management of a lighting system on the streets and alleys of the City of Helena within the said district No. 190, all of which would be in direct violation of

the above-quoted mandate of the Constitution and the applicable statutes. It follows that such city funds and tax money may not be so used. Compare Sjostrum v. State Highway Commission, 124 Mont. 562, 569, 228 Pac. (2d) 238; Thaanum v. Bynum Irr. Dist., supra; Cramer v. Montana State Board of Food Distributors, supra. Courts will look to the facts and determine whether the particular ordinance or resolution or act of the council or commission carries out the spirit and intent of the applicable legislation and the mandatory procedure required, or whether the resolution tends directly or indirectly to nullify the legislative requirements. Compare State ex rel. Quintin v. Edwards, supra.

The court stated in the Quintin case, ''The effect of the proceedings, as a whole, has been to annul the statute and defeat the purpose for which it was enacted, by the very body to which has been intrusted the power to administer it.'' So here in this case, it is the city commission to whom the legislature has granted and entrusted the power and authority, under strict and explicit statutory requirements, to create special improvement lighting districts and to assess the costs thereof, and the installation of the necessary lighting system. The effect of the above-adopted resolutions No. 5229 and No. 5259 has been to annul the constitutional and applicable statutory provisions and defeat the purposes for which they were enacted.

Under such a resolution the city council or commission has illegally delegated its governmental functions to a private corporation in contravention of the above section of the Constitution, as well as in direct violation of the legislative stautory mandate. In adopting the said resolution and assuming to put into operation the proposed terms thereof, the city council or commission of Helena has acted in direct violation of the mandate of the Constitution and the specific requirements prescribed by the statutes and by so acting has in effect granted to the Montana Power Company a franchise to place their poles and wires upon the streets without submitting the appli-

cation as required by R.C.M. 1947, sections 11-1206 and 11-1207. The said resolutions Nos. 5229 and 5259, not being in anywise in conformity with the express law applicable thereto but in direct violation thereof, are void and of no force or effect, and did not confer upon the mayor and city clerk of Helena the authority they assumed to exercise.

For all purposes of jurisdiction, municipalities are like inferior courts and must be able to point to the statute giving them the power and authority for their acts in every case. If this be wanting, their proceedings must be held void whenever they come in question, even collaterally. See State ex rel. Quintin v. Edwards, supra.

Neither the municipality, nor its officers, can do any act, or make any contract, or incur any liability, not authorized by legislative act applicable thereto. All acts beyond the powers so granted are void. These principles are of transcendent importance, and lie at the foundation of the law of municipalities. See 1 Dillon, Municipal Corporations, 5th Ed., section 237, page 450; Stephens v. City of Great Falls, 119 Mont. 368, 371, 175 Pac. (2d) 408; Brackman's, Inc., v. City of Huntington, 126 W. Va. 21, 27 S.E. (2d) 71, 73; City of Huntington v. State Water Commission, 137 W. Va. 786, 73 S.E. (2d) 833; 2 McQuillin, Municipal Corporations, 3d Ed., sections 4.04 and 4.05, pages 12, 13, 14, and cases cited thereunder.

I agree with the majority opinion that the order of the district court dated November 17, 1954, granting the separate motions of the defendants to strike and granting the motion of defendants to quash the injunction theretofore issued in the said cause and dissolving the injunction, should be reversed and set aside and the cause remanded. However, I would give further directions to the court to enter judgment enjoining the defendants, the city commission of the City of Helena, Montana, and the mayor and clerk of such city from proceeding further under the above void resolutions.

MR. CHIEF JUSTICE ADAIR:

I concur in the above opinion of Mr. Justice Bottomly.