No. 42, 836

Winnona M. Hazelwood, *Appellant,* v. Fred B. Hazelwood, *Appellee.*

(376 P. 2d 815)

Opinion filed December 8, 1962.

*Morris D. Hildreth,* of Coffeyville, argued the cause, and *Richard L. Becker,* of Coffeyville, was with him on the briefs for appellant.

*Aubrey Neale,* of Coffeyville, argued the cause, and *Ray A. Neale,* of Coffeyville, was with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: This is an appeal from an order of the district court changing the custody of the parties' minor son from the plaintiff to the defendant.

On August 5, 1960, the district court granted plaintiff a divorce,

divided the real and personal property of the parties, and awarded the custody of the minor adopted children of the parties, Carolyn Hazelwood, 14 years of age, and William Hazelwood, 8 years of age, to the plaintiff, and gave the defendant liberal rights of visitation. He was to have the children on Wednesday evenings until 8:30 p. m.; on Friday evenings until 10:00 p. m. of each week; every other week from Friday evening until Sunday evening at 8:00 p. m.; on Christmas Eve and on Thanksgiving and Christmas Day until 2:00 p. m.; for thirty days during the summer vacation period, and at other reasonable times on agreement of the parties. William was permitted at reasonable times to play in the defendant's shop. There was no contention by either party that the other was unfit to have the children. The defendant was ordered to pay plaintiff $150 per month support for the children and to pay $2,500 alimony at the rate of $50 per month.

The defendant operated a plumbing shop which shop and the apartment in connection with it were given to the defendant and plaintiff was given the home and furniture in Coffeyville. The children had always lived in Coffeyville where they attended public school and Sunday school. William was close to the defendant and liked to go with him on his truck and be around the shop with him. Carolyn was closer to the plaintiff. The plaintiff had a permanent job with the Condon National Bank in Coffeyville and earned $175 per month, and her home was clear.

In August, 1961, plaintiff decided to move to Provo, Utah, where she could secure better employment. She sold her home for $6,500, and accepted a position in Provo to commence work on September 1, 1961. Her brother lived in Provo and she and the children were going to live in his home. After completing her arrangements, she filed the application out of which this appeal arises, to change the original custody order to deprive the defendant of the visitation rights granted him under the decree of divorce. The defendant filed a response and alleged that it was for the best interests of the children that they remain in Coffeyville where they could have the benefit of both parents and where plaintiff had a home and household furnishings free and clear of encumbrance; that the defendant was paying plaintiff a total of $200 per month and she was receiving a salary of $175 per month; that the move contemplated by plaintiff was for her own interest and to deprive the defendant of his right to be with the children, and that since the divorce the defendant had attempted

to arrange visitation rights to the best interests of the children. The defendant further alleged if the plaintiff insisted on leaving Coffeyville, that it would be for the best interests of the children for William to be with the defendant and Carolyn to be with the plaintiff, and if such a custody change be made, the support payments be reduced accordingly.

With the issues joined, both parties introduced evidence. The plaintiff testified that William was close to his father and liked to go with him on the truck, liked to be in the shop and enjoyed being around his father; that William and his father went places together; that he would get mad when he couldn't go to see his father "when it isn't convenient with her plans." Plaintiff further testified that although she had a permanent position at The Condon National Bank and was presently earning $175 per month, she thought she could get better job opportunities in Utah and could make $50 to $75 more per month, and this would be better for her after the children were grown. She stated her real reason for disposing of the home and moving into her brother's home in Provo, Utah, and taking the children away from their father and their friends and associates as follows: "Well, what am I going to do when the children are grown and gone. I have got to work where my best opportunity is." When asked about the interests of the children and whether her taking them twelve hundred miles away from their father would be to their best interests, she said, "I can't say."

The defendant testified that he would take care of William, that he loved him, that he had bought things for the children besides the money he paid plaintiff and that someone was always in the shop which is located over his apartment, and that he felt for William's sake it would be better for him to be left with the defendant.

The following is a portion of the remarks made by the district court at the conclusion of the evidence:

"Mrs. Hazelwood is going to Utah. She has a right to go. She doesn't have to go. It is her choice . . .

"Now, the minute (she) goes to Utah and takes the children with her this court has no further jurisdiction or any further right to make any modification or any order of any kind concerning these children or for change in custody or visitation. It has to be left to the courts out there in Utah . . . but I still can't help think, being interested in these children, to think that their best interests lies right down there in Coffeyville where they had their start, where they have had their associations, and they are both really of tender years, and where they have their friends and have adequate facilities with regard to their upbringing and their education. Well, we can't depend on

that any more because mother can make $50.00 more a month out in some other state, and she has a perfect right to go to another state if she wants to, but that doesn't mean she has a right to—being divorced as she is, and the children still having another parent—that doesn't mean that she's got a right to take these children out there. . . . Think how unfair to require him to support these children out in Utah and he would never have an opportunity to even see them unless he would let them have money or send them a ticket to come home and even then we aren't sure they would be permitted to come home because this court has no jurisdiction to require them to be brought home, so we will change the order of custody to the effect that the boy, William Virgil, be in the custody of his father, and the daughter, Caroline Sue, in the custody of the mother, and we will just split the support money in half and the defendant can contribute $75.00 a month to the support of the daughter. That is the only way I know to do it. It is going to be a pretty difficult situation to establish, but we will make the provision that Mr. Hazelwood can visit Caroline in Utah."

In its order changing custody and fixing visitation rights the court found, in part, as follows:

"THE COURT FURTHER FINDS that under the facts and circumstances, it is for the best interests of the children that the custody of Carolyn Hazelwood remain with the plaintiff, and that the custody of William Hazelwood be awarded to the defendant, and that the defendant assume full responsibility for the care, custody, control and support of said William Hazelwood, and that the defendant pay to the plaintiff the sum of $75.00 per month for the support of Carolyn Hazelwood, and that the plaintiff be permitted to take the said Carolyn Hazelwood to Provo, Utah, and that each of the parties hereto should be given the right of reasonable visitation with the child in the custody of the other party."

The plaintiff mother concedes that it is the well-settled rule in this state that the question of change of custody rests in the sound judicial discretion of the trial court after consideration of all the facts and circumstances shown by the evidence, and on appellate review its decision will not be disturbed unless there is a clear showing of an abuse of that discretion. (*Travis v. Travis*, 163 Kan. 54, 180 P. 2d 310; *Maston v. Maston*, 171 Kan. 112, 229 P. 2d 756; *Bierce v. Hanson*, 171 Kan. 422, 233 P. 2d 520; *Goetz v. Goetz*, 181 Kan. 128, 309 P. 2d 655.) However, she contends that the district court's order depriving an eight-year-old boy of both a mother and a sister constitutes a clear abuse of judicial discretion. While the rule is firmly established that where parties are divorced, having minor children of tender years, absent a finding of unfitness on the part of the mother, she will, generally speaking, be awarded the custody of the minor children, and that absent a change of circumstances re-

quiring a modification of the original decree, the custody will not be changed. (*Bierce v. Hanson,* supra; *Travis v. Travis,* supra.)

In the instant case the minor children are adopted children of the parties and it is possible that the district court took that fact into consideration when it entered the order changing the custody of William. Be that as it may, the plaintiff's application to change visitation rights disclosed a change of circumstances which we think was proper under the evidence to modify the original custody order. Plaintiff was leaving the state and asked the court to deprive the children and their father of all rights to be together, not because of any fault of the father, but because the mother though it would be better for herself. In commenting upon the evidence of the parties, the court stated it believed the best interests of the children were that they remain in Coffeyville but that the plaintiff had the right to go to Utah, and it believed it was to the best interests of William that he stay in Coffeyville with his father and that it was to the best interest of Carolyn that she go to Utah with the plaintiff. The court was fully justified in making such change as he believed was for the best interests of the children, and we cannot say that its decision changing the custody as here disclosed was a clear abuse of judicial discretion. In *Travis v. Travis,* supra, the court stated:

". . . The trial court had the parties and the witnesses before it, it had the grave responsibility of determining the best interests of the child, and being aware of its power to change its order at any time, may well have concluded to make the order as it did and see what would develop. (Citation.) Perhaps on the evidence adduced, this court might have made a different order, but that is not a test. Rather, on the present record we must be able to say, as a matter of law, that the trial court abused its discretion, and that we cannot say." (1. c. 61.)

Likewise, in *Talbott v. Talbott,* 177 Kan. 66, 276 P. 2d 293, it was said:

". . . We are advised that the trial judge who heard these motions is the same judge who presided over the divorce action. Such being the case, he was more familiar with the situation than he otherwise would have been. It always has been the rule in this state that matters pertaining to custody of children in divorce actions are within the sound discretion of the trial court, and that, absent an affirmative showing of abuse of such discretion, orders pertaining thereto will not be disturbed by this court on appeal." (1. c. 69, 70.)

See, also, *Dodd v. Dodd,* 171 Kan. 46, 299 P. 2d 761, and *Kamphaus v. Kamphaus,* 174 Kan. 494, 256 P. 2d 883.

As in the Talbott case, the district court in the instant case pre-

sided over the divorce action and heard the motions for modification of the custody order, and the evidence, and his comments show he did what he thought was for the best interests of the children.

The burden was upon the plaintiff to show that the district court abused its discretion and having failed to sustain that burden, the judgment of the district court is affirmed.