No. 45,826

DORMA LEE ADKISON, *Appellant,* v. WILLIAM EARL ADKISON, *Appellee.*

(476 P. 2d 216)

Opinion filed November 7, 1970.

*Gerald D. Lasswell,* of Smith, Stinson, McMaster, Lasswell and Smith, of Wichita, argued the cause and was on the brief for the appellant.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment of the district court granting custody of a five months old baby girl to the father following a divorce decree.

The appellant does not appear to be requesting any change in the decree granting the divorce but dwells on the divorce proceedings for the purpose of showing the arbitrary and prejudicial conduct of the trial judge in the entire matter.

The general thrust of appellant's contentions is that—

"The demeanor of the trial court throughout the trial shows that the trial court abused its discretion and was unduly prejudiced against the plaintiff and that this prejudice materially hindered the plaintiff's receiving substantial justice."

Insofar as the above contention is to be applied to the decree granting custody of the five months old baby girl to the father rather than to the mother, we are inclined to agree with appellant.

Before we discuss the facts, the procedure at the trial and the rulings of the trial court, it would perhaps be helpful if we discussed the general rule of law applicable in the determination of child custody.

When a situation exists such as is here presented, the paramount consideration of the trial court is the welfare and best interest of the child. The trial court is in the best position to judge whether the best interests of the child are being served and

in the absence of the abuse of judicial discretion this court will not disturb a trial court's judgment. (*Bergen v. Bergen*, 195 Kan. 103, 403 P. 2d 125; *Whitebread v. Kilgore*, 193 Kan. 66, 391 P. 2d 1019; *Hazelwood v. Hazelwood*, 190 Kan. 493, 376 P. 2d 815.) However, where an abuse of discretion is affirmatively shown by the record, this court will not hesitate to reverse or change the order of the trial court. (*Gardner v. Gardner*, 192 Kan. 529, 389 P. 2d 746.)

It is an elementary rule in this state that if a child is of tender age it almost of necessity must be entrusted to its mother's care, without weighing unduly what may be some possible short-comings in her character or conduct. (*Janney v. Janney*, 159 Kan. 230, 154 P. 2d 131.)

A hearing on child custody requires the careful and con-scientious consideration of all material factors in order that courts may exercise sound judicial discretion in the premises. (*Prier v. Lancaster*, 169 Kan. 368, 219 P. 2d 358.)

Plaintiff and defendant were married September 14, 1966. A child was born from such marriage December 20, 1968. Plaintiff had three children by a prior marriage. About one month after the child was born to the latter marriage, defendant left the home and took all of the furniture. Plaintiff had to borrow a bottle warmer to feed the baby. The welfare agency then helped her start a new home. During all of the time referred to herein defendant had contributed but twenty or thirty dollars to the support of plaintiff and the child.

The above facts are not in dispute.

On March 28, 1969, plaintiff filed suit for divorce and custody of the child. Defendant filed an answer and cross-petition asking for divorce from plaintiff and custody of the child.

Trial was commenced on May 23, 1969, following an announce-ment by the trial court that—

"After a short pretrial conference it developes the divorce itself is not con-tested in this case. Therefore, the evidence on the divorce should be mini-mum. . . ."

The plaintiff testified to the facts heretofore presented and fur-ther that the defendant had threatened to kill her with a gun. She testified that she was "deadly scared of him."

Dorothy Holmes, a witness for plaintiff, corroborated plaintiff's testimony. She was present when defendant pointed a gun at

plaintiff. She had observed black and blue marks on plaintiff while she was living with defendant. She testified that defendant "drinks quite a bit and when he drinks he has a terrible temper." She was present when defendant moved out the furniture. When he moved the stove, plaintiff had no way of warming the bottle for the month old baby. She further testified that plaintiff took good care of the children, kept them clean and was a fit and proper mother.

The court then advised counsel for plaintiff that any other evidence would be merely cumulative, and that at this time no more evidence was needed on the divorce question.

Thereafter the defendant testified in his own behalf. Defendant stated that he had heard his wife's request for a divorce and that he agreed a divorce should be granted in this case. He stated that he did not wish to contest the divorce itself.

Defendant was then asked to state his grounds for divorce and over the objections of plaintiff testified what his grounds for divorce would be and claimed his wife caused their fights. He further testified, "I am a highly nervous man." He had given his wife thirty dollars for support from January 20, to May 23, 1969. He requested the court for custody of his child and stated he had facilities to keep the child in that his aunt had asked him to make his home with her. He said he, his aunt and his mother would care for the child; he could adequately care for the child, and that he never wanted the divorce in the first place. He testified he saw a man enter his wife's house at 9:30 P. M. on May 3, and not come out before he left at 12:30 A. M. The witness stated he approached his wife and the other man the next day and tried to see his child and was refused.

In the last four months he had received $1,600.00 in wages.

Gladys Adkison testified she was the mother of defendant and that she lives at 602 West 4th, Winfield, Kansas. She stated that she was willing to raise the baby and that she was capable and had adequate facilities. The witness stated she sat with Mr. Adkison in front of his wife's house, one time only, between 8:00 P. M. and about 5:30 A. M. the next day. At about 12:30 A. M. a man came out, rolled up his car windows and went back inside the house.

On cross-examination the witness stated she was sixty-two years old and had last cared for children thirty-two years ago. She had had six children of her own, five before her divorce. She cared for her own five children for three years after her own divorce until

her health went bad and then their father, who was her former husband, took them to raise. She further testified she had been arrested for driving while intoxicated.

All of the witnesses, including the defendant, testified that plaintiff was a good housekeeper and that the children were clean and well cared for.

The trial court entered judgment granting the parties a divorce each from the other and decreed that the custody of the infant child be transferred from plaintiff to defendant no later than 8:00 P. M. the date of the decree. It was further ordered that each party pay their own attorney fees. The previous order under which defendant had paid $120.00 on a $200.00 allowance for attorney fees to plaintiff was set aside.

The plaintiff filed a motion for an amendment of findings, amendment of judgment and for a new trial.

Counsel for plaintiff made his own investigation in preparation for presenting the above motion. He attached to his affidavit a signed statement from the aunt of the defendant stating that she was 64 years of age, she did not know the defendant had used her name in the divorce case and that defendant and his mother were not going to live with her because she could not take care of the baby and hold her job. She further stated that she thought the plaintiff should have been given care of the baby.

Plaintiff's attorney also filed his affidavit to which was attached the written statement of the brother-in-law of defendant's mother who was to help defendant keep the baby. The statement reads in part:

"During the early or middle part of the 1930's my brother Ralph Tanner was separated from Gladys [defendant's mother] and was traveling outside of the State of Kansas as a photographer. During that time Gladys was living in Winfield & had with her the five children that were born to her and my brother, Ralph Tanner. During this period of time my brother would mail to me money for me to give to Gladys for support & the support of their five children.

"During this period of time Gladys was taking very poor care of the children & finally it became so bad that I went & got the children & took them to my mother for her to raise. My mother thereafter raised the children for a number of years & Gladys seldom ever visited them although they lived in Cowley County, Kansas.

"During the time that Gladys had the children before my mother took them

to raise, the children were very poorly cared for by Gladys. Their clothes were dirty & they had holes in their shoes, although I was delivering sufficient money each week to Gladys for their support.

"At the time I picked up the five children from Gladys & took them to my mother for her to raise until my brother remarried, Gladys told me she didn't want the children since she didn't want to be bothered with them.

"I have been told that Gladys said that she gave up the five children because of her health. This is not true. The reason she gave them up is because she wasn't taking care of them & didn't want to be bothered with them. The condition of the children in her care was so bad that I had to take them to my mother's to raise until my brother remarried."

Plaintiff's attorney also filed an affidavit which reads in part:

"That he is one of the attorneys for the plaintiff in the above entitled matter; that he has checked the records of the Winfield Police Department, Winfield, Kansas, and has ascertained that such records reflect that one Gladys Adkison was convicted in the Winfield City Court of Winfield, Kansas, on the charge of drunkenness in 1944; that she was arrested on the charge of driving under the influence of intoxicating liquor and having no driver's license in Winfield, Kansas, on October 29, 1968; and that the records of the Police Department of Winfield, Kansas, reflect evidence of .19 alcohol content in Gladys Adkison's blood at the time; and that thereafter said Gladys Adkison was convicted of such charges on November 27, 1968, in the Municipal Court of Winfield, Kansas, fined the sum of $100.00, and placed upon probation for a period of one year thereafter with reporting dates to her parole officer on July 8, 1969, and November 12, 1969; at the time of her arrest on October 29, 1968, the said Gladys Adkison was placed in jail at the City of Winfield Jail and remained in jail overnight and was released the following morning; . . ."

At the hearing on the motion for new trial, the law partner of plaintiff's original counsel argued the matter because original counsel had made the affidavits and thought he might also be required to testify in connection therewith. After the argument the court in substance stated that since the counsel arguing this motion was not the same counsel who tried the case, the court would be required to disregard the arguments of counsel. Thereupon, the court questioned trial counsel on why he did not argue the motion. Trial counsel's reply was that he was leaving himself available to testify concerning the affidavits filed in support of the motion.

The trial judge, disregarding the arguments of counsel and the uncontradicted affidavits introduced with the motion for new trial, then stated that he had made certain findings of fact at the trial in order to spare the feelings of the parties involved. He stated that if the court must now make specific findings, which findings

had never been requested by either party, the court finds that the "husband had proven grounds for divorce against the wife and that the wife had not proven grounds for divorce against him. . . ." and the wife was unfit to have custody of the child.

An appeal was filed and in due course a request was made to the district court for permission to proceed with the appeal in forma pauperis. The trial court denied the application and permission had to be obtained from this court.

The plaintiff filed an application for temporary custody during the appeal or in the alternative for reasonable visitation rights.

Plaintiff presented evidence under oath that she was being denied reasonable visitation rights with her child. Defendant had moved from a number of different residences in a short period of time between the trial and the motion for temporary custody. Neither the plaintiff nor her counsel could find out where the defendant was staying with the child. The plaintiff presented evidence that she had only seen her child three times since custody was granted to the father. The court, over the objection of the plaintiff, allowed the defendant to testify without being sworn. While the defendant was testifying without being sworn, counsel for defendant suggested that he would be willing to have the testimony under oath retroactive. The court stated, "this is just for therapy. We want to understand each other better." In overruling the motion for at least reasonable visitation rights, the court stated, "Well, this is on appeal to another court, and the other court will decide whether other error was committed here. I see nothing to do, except to leave it in status quo."

We are forced to conclude that at the hearings on custody of the child there was not the careful and conscientious consideration of all material factors making it possible for the trial court to exercise sound judicial discretion in the premises, and under the facts and circumstances disclosed by the record the trial court abused its discretion in taking the five months old baby girl from its mother and giving custody to the father.

We are not directing the immediate delivery of the custody of the child to the mother. Right to custody must be determined from the facts and circumstances existing at the time the determination is made. Over a year has expired since the custody order was made by the trial court. There is also the question of child support if and when a change of custody is decreed.

It is ordered that, as soon as possible, compatible with due process and proper procedure, a full hearing be held to determine the proper custody of the infant under present conditions, and that the matter be transferred to another division for such hearing.

APPROVED BY THE COURT.

FONTRON, J., concurring: I agree that prejudicial error is disclosed by the record and that Mrs. Adkison should be granted a new trial as to matters relating to child custody. Furthermore, I concur in the view that the case should be transferred to another division of the Sedgwick County District Court for the purpose of conducting the rehearing.

In addition to the directions which the court has set out in its opinion, I would also direct that Mrs. Adkison be accorded specific rights of visitation with her infant daughter, even now less than two years old, during pendency of the rehearing proceedings, and that the order granting such visitation rights spell out the time, place and length of the mother's visits.

The record clearly reflects recalcitrance on the part of Mr. Adkison in matters pertaining to visits by Mrs. Adkison with the child. He seldom permitted any visitations by the mother, and failed to keep her properly advised of the child's whereabouts. Upon oral argument, at which Mr. Adkison did not appear, the court was advised that Mrs. Adkison had not seen her child for a period of several months and had been unable to ascertain where either the girl or her father could be found.

For the reasons expressed, I believe a proper order of visitation should be made as early as possible. Not only would such an order be just, but it might be of assistance to Mrs. Adkison in locating her small daughter.